### LEWIS v. CITY OF TULSA.

No. 24814. Dec. 15, 1936.

Rehearing Denied Jan. 26, 1937.

Application for Leave to File Second Petition for Rehearing Denied Feb. 9, 1937.

Robt. W. Gibbs and W. J. Campbell, for plaintiff in error.

H. O. B and, City Atty., O. H. Searcy, Bert E. Johnson, C. L. Hamilton, and Edna C aire King, for defendant in error.

BUSBY, J. This case involves the asserted liability of a municipality to a person who claims to have been injured while traveling along a sidewalk by reason of an alleged defect in the walk. It differs from many cases with which we are confronted in that the defective condition of the walk is alleged to have been created as the result of the adoption by the municipality of an improper plan of construction as distinguished from the failure on the part of the municipality to repair or properly maintain the walk after the construction thereof. This distinction, as we shall subsequently point out, requires the consideration of an additional legal element.

The action was commenced in the district court of Tulsa county on the 30th of March, 1932, by Emma Lewis, as plaintiff, against the city of Tulsa, as defendant. The plaintiff alleged in her petition that while traveling along the sidewalk on the west side of Rockford avenue in the defendant city on the evening of January 8, 1932, she unexpectedly stepped off a perpendicular drop existing in the walk at an unlighted place in the street, which caused her to fall and sustain severe personal injuries, for which she claimed damages in the sum of $25,000.

The drop or step-off where the plaintiff claims to have fallen is described in her petition as being perpendicular and 14 inches in height. It is said to have existed near the middle of the block. From an exhibit attached to the petition it would appear that it was at a point where an alley intersected the sidewalk. It is asserted in the petition, in substance, that the drop was constructed pursuant to and in accordance with a plan suggested by the engineering department of the city of Tulsa and approved and adopted by the defendant city. The asserted basis of defendant's liability is the adoption of this assertedly improper plan and the subsequent failure after the plan had been carried into execution to correct the defect created thereby.

The defendant. city filed its answer to the petition of the plaintiff, consisting of a general denial and additional special defenses which need not be herein reviewed.

The case was called for trial on the 3rd day of January, 1933, and, after a jury had been impaneled, the defendant city lodged an objection to the introduction of evidence upon the theory that the petition of the plaintiff did not state a cause of action. This objection was in the nature of a general demurrer and presented a similar challenge to the sufficiency of the plaintiff's petition. The trial court sustained the objection and discharged the jury from further consideration of the case. Plaintiff brings the case to this court upon appeal for review.

It is the duty of the municipality to use ordinary care in maintaining its streets and walks in reasonably safe condition for the use of the traveling public, and a failure to exercise this degree of care constitutes negligence on the part of the municipality. Such negligence is actionable if it arises from the failure of the municipality to repair or correct a dangerous condition which has come into existence through wear and tear upon the streets or in some other manner not connected with the adoption of an original plan for public improvements, provided, of course, that the city had notice, either actual or constructive, of the existing dangerous condition. It is the theory of the law in the class of cases just described that the city, while acting in the construction, maintenance, or repair of its streets, is doing so in a proprietary as distinguished from a governmental function, and because of this classification of its action, it stands in a position with respect to its responsibility for tort similar to if not identical with that occupied by an ordinary private individual. Spaur v. City of Pawhuska, 172 Okla. 285, 43 P. (2d) 408.

But there is another class of cases involving governmental acts in which the negligence of a city, acting through its officers and agents, is not actionable. The adoption of a plan for public improvements is a governmental function. By some authorities it is classified as legislative. Dil'on on Mun. Corp. (5th Ed.) vol. 3, sec. 1142. By others it is said to be judicial. McQuillin on Mun. Corp., vol. 5, sec. 2804, p. 792. Regardless of whether the act adopting the plan should be classified as legislative or judicia', the authorities are in general accord that municipalities are not liable for errors in judgment in the plan adopted. This rule, however, is not without limitations, and the courts, while observing its general applicability to this class of cases. have shown a reluctance to carry it to its logical extreme and have accordingly placed upon the application of the rule certain limitations. Thus it has been frequently held that when the plan adopted creates a condition so manifestly dangerous that no reasonably prudent man would sanc-

tion its existence, the municipality may be held responsible for resulting injuries. This limitation upon the rule seems to be in accord with the trend of modern authority, although the courts are not in accord as to the reason or theory upon which the exception should be recognized.

We shall consider the legal basis of the exception at a later point in this opinion.

Obviously, we think the exception should be recognized, for, without its judicial recognition, municipalities could countenance the existence of dangerous traps and pitfalls and claim immunity from the consequences thereof on the theory that the same constitutes a portion of a plan for public improvements previously constructed in accordance with a governmental act of adoption.

The rule is thus stated in 13 R. C. L. pp. 95-96 in the following language:

"In adopting a plan for the improvement of its streets or highways a municipality acts in a judicial or legislative capacity, and hence as a general rule will not be liable for consequential damages to individuals who are injured in their persons or property by reason of errors or defects in the plan adopted, provided, it is one which the judgment of prudent men might approve, and that the completed street is reasonably safe for public travel. But in carrying out its plans the municipality acts ministerially and is bound to see that the work is done in a reasonably safe and skilful manner, though it has been declared that if it is so doubtful on the facts whether the street as planned or ordered by the city governing board is dangerous or unsafe or not, that different minds might entertain different opinions with respect thereto, the benefit of the doubt should be given the city, and it should not be held liable. Pursuant to the foregoing rules, it has been held that a municipality is not liable for injuries to travelers resulting from leaving niches in sidewalks to enable them to pass growing trees, even in a case where the niche remains after the tree has been removed; **nor from a construction of a sidewalk with a step which, from the nature of the grade, the municipal authority thinks proper.**"

The emphasized portion of the above quotation purports to recognize an absolute immunity from liability on the part of the municipality when a step is constructed as a part of the plan. In support of the text the case of Teager v. Flemingsburg, 109 Ky. 746, 60 S. W. 718, 95 A. S. R. 400, 53 L. R. A. 791, is cited. That case, however, does not support the unqualified language contained in the text. The substance of the holding in that case as expressed in the headnote thereto is:

"The building of a step in a sidewalk is not of itself such negligence as will make the municipality liable for injuries to a pedestrian from a fall caused by the step, **if the plan adopted is not palpably unsafe.** * * *"

In the body of the opinion in that case the court observed:

"But we rather incline to the view that, while the city governing body may exercise its discretion in the selection of a plan of street improvement, if the plan adopted is one palpably unsafe to travelers, the city would be liable. But when the plan is one that many prudent men might approve; or where it would be so doubtful upon the facts whether the street as planned or ordered by the city governing board was dangerous or unsafe or not,—that different minds might entertain different opinions with respect thereto,—the benefit of the doubt should be given the city, and it should not be held liable."

And at a later point in the opinion it was stated:

"The determination of the necessity and the plan should be left to the discretion of the governing or legislative body of the city, subject to control in cases of such manifest error or mistake as would indicate a failure to consider or a purpose to misconstruct the work."

In 19 R. C. L., at pages 1091-2-3, paragraph 376, the basis of liability under consideration in this action is again treated. It is therein said:

"It is generally held that a municipal corporation is not liable for injuries to person or property resulting from the adoption of an improper plan for a public improvement, at least, where the defects in such plan are due to mere error of judgment. This doctrine is, however, of limited application. * * * It is, however, certainly not the law that a municipal corporation can escape liability for the infringement of the private rights of individuals, or for a breach of its positive duties by showing that such infringement or breach was the result of the plan adopted by the municipal authorities. * * * It is expressly held in some states that while a municipality cannot be held liable for a mere failure to use the best judgment in devising a plan, if it is negligent, and adopts a plan which all persons of reasonable prudence and intelligence would agree was unsound, it will be civilly responsible for the consequences."

In the case of Watters v. City of Omaha, 76 Neb. 855, 14 Ann. Cas. 750, the Nebraska court, in excusing a municipality from liability upon consideration of the rule involved in this case, stated:

"In planning a public work municipal authorities are required to exercise reasonable care and judgment, and if the services of pro-

fessional men, experts in the work contemplated, are needed, they should employ those who have all the knowledge and skill that experience in such work would naturally give them. Diamond Match Co. v. New Haven. 55 Conn. 510, 13 Atl. 409, 3 Am. St. Rep. 70. When that course has been pursued in good faith, and the work has been carried on and completed as planned and specified, the municipality should not be held responsible, unless the structure is so manifestly dangerous that all reasonable minds must agree that it was unsafe."

A collection of cases dealing in part with this character of municipal liability is contained in the note in 20 L. R. A. (N. S.) p. 637. Other cases dealing with the same subject are: McCutcheon v. Common Council of Homer, 43 Mich. 483, 5 N. W. 668; Gallagher v. City of Tipton, 133 Mo. App. 557, 113 S. W. 674; Morris v. Salt Lake City (Utah) 101 P. 373; Minerva Knight v. City of La-Grande (Ore.) 271 P. 41, 61 A. L. R. 256; Ward v. Salt Lake City (Utah) 151 P. 908; Johnston v. District of Columbia, 118 U. S. 19, 6 Sup. Ct. 923, 30 L. Ed. 75.

Counsel do not call our attention to any case in which this court has had occasion to consider the question upon a precise and definite presentation thereof. There are, however, cases reported in this jurisdiction wherein the question possibly could have been but was not raised by the litigating parties. City of Duncan v. Brown, 69 Okla. 246, 172 P. 79; City of Ada v. Burrow, 171 Okla. 142, 42 P. (2d) 111.

Upon consideration of the foregoing authorities from other jurisdictions and the rule as therein announced, we conclude that a municipality of this state is not responsible for errors in judgment in the adoption of a plan for public improvements such as a sidewalk, and liability cannot attach by reason of a defect inherent in the plan adopted, unless the condition created by the adoption of such plan and the construction of the improvement in accordance therewith is so palpably and manifestly dangerous that all reasonable men must agree that it was unsafe, in which case the liability attaches by reason of failure to correct rather than by reason of the adoption of the plan.

The ministerial officers of a city are not charged with the responsibility of exercising a superior legislative or judicial judgment and correcting errors of judgment made by the governing body in the adoption of a plan for public improvements. Thus, if the plan as adopted and carried out represented a mere error of judgment, the continued existence of the condition created by the adoption of the plan does not create a basis for municipal liability, unless that condition is sufficiently dangerous to fall within the exception to the rule previously noted supra.

What, then, is the correct legal basis for the exception to the rule of nonliability? Some courts justify it upon the theory that the actionable negligence arises from the failure on the part of the ministerial officers to correct the manifestly dangerous condition after the creation thereof. Other cases seem to justify the exception upon the theory that the manifestly dangerous condition constitutes a nuisance. Other courts merely recognize the exception to the rule as a necessary limitation, without concerning themselves with the technical basis of its existence. The first named reason is, we think, more firmly grounded upon tenable legal principles.

As we have noted, the adoption of a plan for public improvement is a judicial or legislative act. Immunity from liability which surrounds a judicial or legislative act is generally absolute, as distinguished from qualified. Thus legal liability under the exception to the rule cannot be said to arise out of negligence, whether ordinary or gross, in the adoption of the plan. The true legal basis of liability recognized by the courts then is the subsequent failure to correct defects created by the plan adopted. Since the ministerial officers of a municipality are neither required nor authorized to exercise a superior legislative or judicial judgment, a municipality cannot be held responsible for their failure to correct a condition created by an error in judgment in the adoption of the plan. It is only when the plan adopted creates a condition which is so manifestly and palpably unsafe that no reasonable man would approve its continued existence that the municipality can be held liable for the failure of its servants to correct the defect thus created. The Connecticut court clearly recognizes that it is the subsequent failure to correct the defect and not the adoption of the plan which constitutes the basis of liability (Perrotti v. Bennett, 109 A. 890), although the test of liability as applied in that case is slightly different from that of other courts as herein approved by us. The test recognized in Connecticut is that "injury be ultimately necessarily the inevitable or probable result" of the defect.

In the application of the rule and the exception thereto, the courts have not been

in entire accord. The Nebraska court in Watters v. City of Omaha, supra, excused the city of Omaha from liability in the construction of an open stairway which was said to be too steep and a railing in connection therewith which was asserted not to have been sufficiently high for the protection of persons using the same. The Kentucky court in Teager v. City of Flemingsburg, supra, excused the municipality from liability in that case for injuries arising from the construction of a step four or five inches high. And the Illinois Court of Appeals in Healy v. Chicago, 131 Ill. App. 183, declared that no liability existed for a 13-inch perpendicular step-off in a sidewalk.

On the other hand, the Supreme Court of California decided in the case of Rafferty v. City of Marysville, 280 P. 118, that a 15-inch perpendicular drop in the portion of the street used by pedestrians constituted a possible basis for municipal liability. However, that court did not analyze the rules of law involved as herein outlined. It was expressly stated therein that the decision. rested upon the facts.

This brings us to an application of the principles to the fact situation presented in the case at bar. Does this case fall within the rule or the exception thereto? Plaintiff in her petition has pleaded the existence of a 14-inch perpendicular drop which she asserts was the proximate cause of her injury. The perpendicular drop thus described is admittedly the result of an adopted plan. It existed at an alley intersection in the middle of a block, a point where differences in elevation of the portion of streets used by pedestrians frequently occur. It is not unreasonable to assume that pedestrians using the street would anticipate some difference in elevation of a walk at that point and exercise some precaution to prevent themselves from being thrown off balance. As to the length of the particular step, the observation of the Illinois court in Healy v. Chicago, supra, is peculiarly appropriate. It said:

"In the case at bar there was neither step nor inclined plane, but for a step down of thirteen inches—certainly not more than frequently occurs from curb to street level, or from sidewalk to cross-walk—the city or the builder of the sidewalk might have concluded that the absence of an intermediate step would be safer than its presence. There might be less danger of stumbling or slipping. The distance is not so great as two treads of an ordinary staircase. We do not think the court below could have properly said, as a matter of law, that the method or plan of construction was dangerous, and we think it properly took the cause from the jury."

Upon consideration of the foregoing authorities, we approve the action of the trial court and hold the situation presented by plaintiff's petition falls within the rule, rather than the exception thereto.

The situation herein involved and the rules of law applicable herein must not be confused with situations in which a proper plan is adopted and there is negligence in the manner in which ministerial officers carry out the plan. In other words, the construction of improvements is a ministerial act, and in that respect it differs from the adoption of a plan pursuant to which the construction work is carried forward. See 13 R. C. L. pp. 95-96, supra. Thus defects created by errors in construction do not fall within the rule of judicial or legislative immunity herein discussed. Neither should this case be confused with the general rules governing the liability of municipalities for failure to maintain or keep their streets and sidewalks in a proper state of repair. The rule of judicial or legislative immunity does not apply to that class of cases.

Care should also be taken not to confuse this case and the principles involved herein with the rule of law which excuses municipalities for failure to correct trivial defects. See City of Tulsa v. Frye, 165 Okla. 302, 25 P. (2d) 1080; City of Bristow v. Pinkley, 158 Okla. 104, 12 P. (2d) 229; City of Ada v. Burrow, 171 Okla. 142, 42 P. (2d) 111; Smith v. City of Tulsa, 172 Okla. 515, 45 P. (2d) 689; Oklahoma City v. Burns, 174 Okla. 512, 50 P. (2d) 1101; Short v. Oklahoma City, 177 Okla. 202, 58 P. (2d) 334. The freedom from liability in that class of cases rests upon an entirely different basis.

The test by which liability is determined in this character of case should not be confused with the test by which liability is determined in cases involving a failure to repair or properly maintain. When the defect in the street or sidewalk is inherent in the plan adopted, liability attaches by reason of the subsequent failure to correct the defect, and then only when the defect is so manifestly and palpably dangerous and unsafe that no reasonable man would approve its continued existence. In the class of cases involving a failure to repair or maintain where the defect is more than trivial, the test applied is that of ordinary care of a reasonably prudent person as outlined in the cases heretofore decided by this court.

The judgment of the trial court is affirmed.

OSBORN, V. C. J., and RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and PHELPS, J., dissent.

PHELPS, J. (dissenting). I am unable to agree with my associates in this case. The opinion announces a rule of law to the effect that liability for negligence in the adoption of a plan may not be imposed unless all reasonable men would agree that it is dangerous. This may be correct. I express no opinion thereon. It is of course obvious that such negligence, as spoken of, is concerned with the choice made by the city authorities in their **legislative** capacity. But it is at the same time admitted by the opinion, as indeed it must be, that the duty of correcting a dangerous condition in the sidewalk (whether the danger is in the plan or in wear and tear being immaterial) is in the ministerial officers of the city. Without at all showing how such a thing is possible, the majority opinion applies the rule of legislative negligence to ministerial or proprietary negligence. Of course it is true that the legislative body of a municipality is clothed with discretion, and that if in choosing between two or more plans it happens to hit upon one which is not wise, or is unsafe, liability should not arise unless the defect is so unsafe that it appears that no discretion at all was used in the selection. But once the selection is made, and the plan is put into execution, the duty of reasonable inspection and foresight for the safety of travelers is a duty of the **ministerial** officers or agents of the city, not the legislative. If danger is there, the duty of rendering the defect safe is a duty of those in charge of the streets, and it makes no difference whether the danger arose from a defective plan or from some other reason, such as crumbling of material, etc.; the danger is present, from whatever source it arose. The city is held to reasonable care in the discharge of its proprietary duties, and, as stated in the majority opinion:

"The city while acting in the construction, maintenance or repair of its streets is doing so in a proprietary as distinguished from a governmental function and because of this classification of its action, it stands in a position with respect to its responsibility for tort similar to if not identical with that occupied by an ordinary private individual."

The opinion states that the duty of **correcting** the condition is **proprietary**. There is no rule of law that all reasonable men must agree that there was negligence, whether it be a city in its proprietary functionings or an individual, before the question may go to the jury. This opinion carries the rule of legislative immunity over to the field of pro-

prietary functioning, where it does not belong. The petition in this case did not limit its allegations of negligence to a defective plan; it also alleged negligence in permitting the hazard to stay there after it was or should have been discovered. The opinion does point out that the ministerial officers, should they discover the defect, are not expected to exercise a judgment superior to that of the legislative officers. This is merely dodging the question. The ministerial officers or agents are under a duty to correct apparent dangers wherever they find them, from whatever source they arise. One cannot legislate a dangerous condition into a safe one; it requires action. If the ministerial officers discover a pitfall, must they wait for an ordinance to be passed before they take steps to protect the public? Must ten or a hundred people injure themselves because an ordinance has not been passed? Must the street superintendent lose all sense of reason? If he believes that a condition is dangerous and fails to do that which reasonable men would do, may he wait until a meeting of the city council is held and an ordinance passed permitting him to do that which it is his duty to do?

Assume that A street has in its sidewalk, at the middle thereof, a two-foot drop. There are no lights around it. It is pitch dark. It is a pitfall. The city council ordered it to be that way. An old lady, who had never walked along there before, such as in this case, comes along and pitches off into it and is permanently injured and suffers the remainder of her life. The city is not liable. The Supreme Court, sitting as a jury, has decided that all reasonable men could not say it was dangerous.

Over on B street we also have a two-foot drop. It, too, is unlighted and unwarned. It is just like the drop on A street. The only difference is that on this street the ground has receded or the material is faulty, so that at that place, through wear and tear or sudden break, a straight downward precipitation has existed for months. It was, of course, the duty of the street department to correct it. By the majority opinion this case may go to the jury, because the city stands in the same position as an ordinary individual. According to the majority opinion, a judgment for plaintiff would be affirmed, because reasonable men might differ over whether danger should have been foreseen on B street, while the same truth would bar recovery on A street. Nevertheless, the law of gravity applies as fully on one street as the other, and on either street the victim

is injured for life. When the street superintendent goes along on a tour of inspection he must correct the hazard in B street, for he may suspect that someone will get hurt there; but he needn't worry about A street, it has been solemnly enacted by ordinance that it is safe.

. It is pointed out in the majority opinion that the question in the instant case should not be confused with the test in cases involving a failure to properly maintain streets and sidewalks. It does not hurt, however, to advert to that class of cases temporarily to show to what extreme lengths we are going to absolve municipalities from negligence. It cannot longer be doubted in this jurisdiction that a little hole in the streets or sidewalks is a question of law and a big hole is a question of fact. I have read and studied all of the cases involving this question, and this case is the first to judicially announce that reasonable men might differ over whether it should have been anticipated that some person would unsuspectingly walk along this unlighted way in the nighttime, unacquainted with the pitfall ahead of him, and would thus innocently step off into space, into a drop of 14 inches, and thus receive permanent injuries.

The fact of it is that we should leave it to the jury to say whether the city, by its proper agents, should have foreseen danger. That is all there is to it, whether the trap was caused by legislative error or ministerial negligence. But most certainly, of all things, the test concerning legislative error should not have been carried over into ministerial or proprietary negligence. The majority opinion bridges this gap with nothing but silence.

Another objection to the majority opinion is that it violates the spirit of our Constitution. For the recovery of money or personal property our citizens are entitled to a jury trial. This is denied them in all cases, by the majority opinion, where the negligence of the city is alleged to consist of the adoption of a dangerous plan. Under the rule announced, if reasonable men might differ, it is a question of law for the court, and the trial judge should enter judgment for the defendant; while if reasonable men would all agree that the plan was dangerous, it is the duty of the judge, under the rule applicable to all cases, to direct a verdict for plaintiff. It is not possible for the question of liability ever to get to the jury. This would not conflict with the Constitution if it were held that no liability exists in this class of cases at all, but when it is admitted that there may be liability if the facts warrant it, and a rule is announced whereunder it may never go to the jury under any circumstances, I cannot concur.