[No. 28949.    Deparment Two.    March 23, 1943.]

MARY FRANCES YARNELL, *by her guardian ad litem*
*C. O. Yarnell, et al., Appellants,* v. MARSHALL
SCHOOL DISTRICT NO. 343, *Respondent.*[1]

*B. A. Farley, G. M. Ferris,* and *Wernette & Crowley,*
for appellants.

*Witherspoon, Witherspoon & Kelley,* for respondent.

BEALS, J. — This action was instituted by C. O.
Yarnell, the father of Mary Frances Yarnell, a minor
seven years of age, both in his capacity as guardian
*ad litem* of his daughter and on his own behalf,
against Marshall school district No. 343, a municipal

[1]Reported in 135 P. (2d) 317.

corporation, for the recovery, as guardian, of heavy damages for injuries suffered by the little girl, and, on his own behalf, for special damages in connection with the same matter.

In September, 1941, Mary enrolled as a student in the public school conducted by defendant. The complaint alleged that the school district had negligently adopted a dangerous appliance for the use of pupils attending its school in obtaining physical exercise, maintaining on the playground a swing approximately fifteen feet in height, to be used by the young pupils; that, by reason of its considerable height, the swing was dangerous, and that the defendant negligently failed to exercise proper supervision over pupils of tender years in the use of the swing; that Mary undertook to use the swing in the manner in which it was intended to be used, and, while swinging thereon to a considerable height, with another pupil, became frightened and fell from the swing, sustaining extremely painful, severe, and permanent injuries, for which judgment was sought. Special damages were asked by plaintiff on account of expenses incurred by reason of Mary's injuries, and for loss of services.

Defendant demurred to the complaint upon several statutory grounds, including the ground that the same failed to state facts sufficient to constitute a cause of action against the defendant, and, after argument, the trial court sustained this demurrer. It may be assumed that the demurrer was sustained upon the ground mentioned. Plaintiff elected to stand upon the complaint, refusing to plead further, and judgment of dismissal was entered, from which this appeal was prosecuted.

Error is assigned upon the entry of the order sustaining the demurrer, and upon the entry of judgment dismissing the action.

■ Rem. Rev. Stat., § 4706 [P. C. § 4897] (Laws 1917, chapter 92, § 1), reads as follows:

"No action shall be brought or maintained against any school district or its officers for any noncontractual acts or omission of such district, its agents, officers or employees, relating to any park, playground, or field house, athletic apparatus or appliance, or manual training equipment, whether situated in or about any schoolhouse or elsewhere, owned, operated or maintained by such school district."

· The recent case of *Casper v. Longview School Dist. No. 122*, 5 Wn. (2d) 403, 105 P. (2d) 503, turned upon the statute above quoted, and our previous decisions in actions of a similar nature against school districts were discussed. The decision in the case of *Bowman v. Union High School Dist. No. 1*, 173 Wash. 299, 22 P. (2d) 991, was overruled, and a judgment in favor of a father for damages on account of the death of his son, who died from injuries received in the course of the operation of manual training equipment in the Longview high school, was reversed, with directions to dismiss the action.

In the case of *Swanson v. School Dist. No. 15*, 109 Wash. 652, 187 Pac. 386, an action against a school district for the recovery of damages suffered by a minor, who was seriously injured by a circular saw maintained and operated in the manual training department of the school, it was held that the action was barred by the section of the statute above quoted.

In the *Bowman* case, above referred to, a complaint filed on behalf of a student in the manual training department of a high school maintained by the defendant, in which it was alleged that the student was injured by a defective planer maintained by the defendant in its manual training department, was held good, and the judgment of the superior court dis-

missing the action, after sustaining a demurrer to the complaint, was reversed.

In the *Casper* case, *supra*, this court sitting *En Banc* unanimously held that the *Bowman* case was not only out of harmony with two other of our decisions, but was in direct conflict with the decision in the *Swanson* case, *supra*, the *Bowman* case being accordingly overruled.

In the case of *Stovall v. Toppenish School Dist. No. 49*, 110 Wash. 97, 188 Pac. 12, 9 A. L. R. 908, a judgment in favor of a minor student, on account of damages for personal injuries received while playing with a steel tank which had been left upon the school playground, was affirmed, it appearing that the tank was no part of the playground equipment, and that, for this reason, the school district was not exonerated from liability by § 4706, *supra*. The legislative intent to exonerate school districts from liability for accidents occurring in connection with the use of regular athletic apparatus on any playground was recognized.

In the recent case of *Bush v. Quinault School Dist. No. 97*, 1 Wn. (2d) 28, 95 P. (2d) 33, a judgment in favor of a minor against the school district, for injuries suffered by the minor as the result of alleged negligent maintenance of playground apparatus and of improper supervision of school children using such apparatus, was reversed, with instructions to dismiss the action. In the course of the opinion, we said:

"The words of the statute (Laws of 1917, chapter 92, Rem. Rev. Stat., § 4706) exonerating school districts from liability for torts of commission or omission relating to playground and athletic apparatus used in connection with the playground owned, operated or maintained by the school district, are all-embracing. That statute exempts school districts from liability for any and all accidents which occur upon any athletic apparatus or appliance which is used in

connection with any playground owned or maintained by the school district. *Bailey v. School Dist. No. 49, supra,* [108 Wash. 612, 185 Pac. 810]; *Stovall v. Toppenish School Dist. No. 49, supra,* [110 Wash. 97, 188 Pac. 12]; *Juntila v. Everett School Dist. No. 24, supra,* [178 Wash. 637, 35 P. (2d) 78]."

In the *Casper* case, the opinion in the *Bush* case was cited with approval.

In the case at bar, appellant argues that, upon the allegations of the complaint, it appears that respondent district adopted a dangerous program for the use of pupils, including Mary Yarnell, in obtaining physical exercise, and maintained as a part of that program the swing above described, which appellant alleges was an extremely dangerous appliance and instrumentality to be used by Mary and other pupils in attendance on the school; that the swing was dangerous if used by young children, because of its extreme height; and that respondent was also negligent in failing to adopt and enforce rules or regulations preventing the use of the swing by young children, and negligently failed to exercise proper supervision over the use of the swing by the smaller children. In this connection, appellant also alleges that respondent had been notified by the principal in charge of the school that the swing was a dangerous instrumentality for the use of pupils of tender age, and should be removed from the playground.

Appellant argues that our previous decisions are not here controlling, because the complaint alleges that respondent, in equipping the play field, included with other appliances for the use of the children the swing above described, which, it is argued, was so manifestly dangerous if used by children of tender years as to require that respondent be held liable because it adopted a plan which was "so palpably and

obviously dangerous and defective as to impress upon the mind of any reasonably prudent person that such a plan would necessarily result in injury."

Appellant refers to Rem. Rev. Stat., § 950 [P. C. § 8393], which provides that certain public corporations, including school districts, may maintain actions in their corporate character, and § 951 [P. C. § 8394], which reads as follows:

"An action may be maintained against a county, or other of the public corporations mentioned or described in the preceding section, either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

These sections were enacted by the legislature in 1869, and were considered by this court in the case of *Redfield v. School Dist. No. 3,* 48 Wash. 85, 92 Pac. 770, in which it was held that a complaint which alleged that a pupil who was injured in a school building by the overturning of a bucket of scalding water, stated a cause of action.

Appellant also cites the case of *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D, 792, in which a judgment for the recovery of damages in favor of a pupil six years of age, who was injured by falling from a ladder in the school basement, the ladder being a part of the equipment provided for use by the students in physical exercises, was affirmed. This court held that, while the district in maintaining the school building was acting in a governmental capacity, and for that reason not liable at common law, the school district could be held liable under § 951, *supra.*

Appellant argues that, while § 4706, *supra*, was enacted to revive the defense of governmental function, in so far as the operation and maintenance by school districts of playground apparatus and manual training equipment are concerned, appellant's cause of action exists independently of §§ 950, 951, and is not barred by § 4706.

The case is before us upon a judgment of dismissal upon sustaining a demurrer, all well pleaded facts in appellant's complaint standing admitted.

Appellant relies upon certain language of the supreme court of Oklahoma, in the case of *Lewis v. Tulsa*, 179 Okla. 176, 64 P. (2d) 675. This was an action against the city for the recovery of damages sought by the plaintiff, who was injured by reason of an alleged defect in the city sidewalk. The trial court sustained a demurrer to the complaint, and the judgment of dismissal was affirmed on appeal. In discussing the question of liability on the part of a municipality, the court called attention to the fact that it has been held

"That when the plan adopted creates a condition so manifestly dangerous that no reasonably prudent man would sanction its existence, the municipality may be held responsible for resulting injuries."

The court observed that this principle is a limitation upon the general rule, and concluded that a municipality should not be held

" . . . responsible for errors in judgment in the adoption of a plan for public improvements such as a sidewalk, and liability cannot attach by reason of a defect inherent in the plan adopted, unless the condition created by the adoption of such plan and the construction of the improvement in accordance therewith is so palpably and manifestly dangerous that all reasonable men must agree that it was unsafe, in which

case the liability attaches by reason of failure to correct rather than by reason of the adoption of the plan."

As the defect consisted of a perpendicular drop in the sidewalk, fourteen inches in height, at an unlighted place, it would seem that the supreme court, in affirming the judgment of dismissal went a long way towards limiting the principle which it suggested should be applied in certain cases.

In the case of *LaFayette v. Clark*, 76 Ind. App. 565, 132 N. E. 651, the appellate court of Indiana observed that

"It is well settled that, while a municipal corporation is not liable for mere errors of judgment in adopting a plan for the improvement of a street, it may be liable where a defective plan is adopted, resulting from negligence in making the selection, rather than from error in judgment."

This case also involved an action against the city for damages resulting from a defect in its streets.

The opinion of the court of appeals of Kentucky, in the case of *Providence v. Hunter*, 231 Ky. 72, 21 S. W. (2d) 135, is to the same effect.

These cases are not controlling here.

The case at bar is controlled by § 4706, *supra*. The language of the statute is plain, and the legislative intent is clear. In the case of *Bailey v. School Dist. No. 49*, 108 Wash. 612, 185 Pac. 810, the section was held to be retroactive and to constitute a defense against an action against a school district for injuries to a student suffered in using playground apparatus, although the action was commenced before the law became effective.

Section 4706 bars any action against a school district "for any noncontractual acts or omission of such district . . . relating to any park, playground, or field house, athletic apparatus or appliance" owned,

operated, or maintained by the school district. The situation disclosed by appellant's complaint falls within the bar of the statute.

The judgment appealed from is affirmed.

SIMPSON, C. J., BLAKE, and ROBINSON, JJ., concur.

GRADY, J. (dissenting)—I am unable to concur with my associates in the foregoing opinion. It is alleged in the complaint, so far as need be considered here, and admitted by the demurrer of the respondent, as follows:

"5. That said defendant negligently adopted a dangerous plan for physical exercise and use of pupils, such as plaintiff, upon the school grounds, which consisted in adopting as a part of said program an extremely dangerous appliance and instrumentality, namely, a swing approximately fifteen feet in height, to be used by plaintiff and other pupils at said school, and negligently put said dangerous plan in operation and installed upon the playgrounds, used by the pupils of said school, said dangerous instrumentality and swing for the use of pupils of a tender age such as this plaintiff, which said swing was dangerous by reason of its extreme height; . . . that several months prior to the injury to plaintiff, as hereinafter set forth, said defendant had been notified by the principal in charge of said school, who had had a long experience in matters of this character, that said swing was a dangerous instrumentality for the use of pupils of tender age, such as plaintiff, and should be removed from said playgrounds, and that notwithstanding such knowledge, notice and warning as to the dangerous character of said swing when used by young pupils of the first and second grades, and such as plaintiff, and the fact that same was obviously dangerous for use by said children, the said defendant failed, neglected and refused to take any precautions whatever for the safety of said pupils, including this plaintiff, and continued to allow said swing to remain on said school playgrounds for the use of said young

pupils, including this plaintiff, . . . That said defendant was negligent and failed to exercise any judgment whatever in adopting the plan for physical exercise which provided for the use by said plaintiff of such a high swing as in this paragraph set forth, because said plan was so palpably and obviously dangerous and defective as to impress upon the mind of any reasonably prudent person that it was dangerous and unsafe, and that injury to a pupil of said school of the age of plaintiff by the use thereof would necessarily result.

"6. That a reasonably safe plan for a swing to be adopted and placed in operation on said playground for plaintiff and children of like age, was and would be a low swing not to exceed eight feet in height, and this is the height of swing that was and is usually and customarily adopted and used on playfields in the territory known as the Inland Empire, of which district defendant is a part, where children of the age of plaintiff were and are allowed to play on a swing, all of which facts were within the knowledge of said defendant; . . ."

The appellant contends that the complaint states a cause of action independently of Rem. Rev. Stat., § 951 [P. C. § 8394], quoted and discussed later on in this opinion, his theory being that, even though it may be said that, in adopting the plan relative to athletic apparatus and in the selection of the swing as a part thereof, the respondent performed a governmental function and would, therefore, be immune from liability, an exception to the rule exists to the effect that, if the plan adopted creates a condition so manifestly dangerous that no reasonably prudent man would sanction its existence, the respondent would be held liable for resulting injuries.

While the cases cited by appellant relate to streets, sidewalks, and highways, they bear sufficient analogy to the case at bar so that it can be said that the rule at law set forth therein applies here. They declare

the rule to be that, even though, in the making and adoption of a plan, the public corporation is performing a governmental function, it is not responsible for errors in judgment or in the exercise of its discretion; and that, if the plan is one that prudent men might approve or where it would be doubtful upon the facts whether the plan was dangerous or safe, and different minds might entertain different opinions with respect thereto, there should be no liability; but, if the plan adopted is one palpably unsafe and dangerous, there is a liability. 38 Am. Jur. 328, § 628; *Nashville v. Brown,* 157 S. W. (2d) (Tenn. App.), 612; *Lewis v. Tulsa,* 179 Okla. 176, 64 P. (2d) 675; *Providence v. Hunter,* 231 Ky. 72, 21 S. W. (2d) 135; *LaDue v. Lebanon Township,* 222 Mich. 301, 192 N. W. 636; *Giaconi v. Astoria,* 60 Ore. 12, 24, 113 Pac. 855, (on rehearing) 118 Pac. 180, 37 L. R. A. (N. S.) 1150.

In the two latter cases, statutes were considered, the Oregon statute being similar to Rem. Rev. Stat., § 951. However persuasive the argument of appellant and the foregoing citations may be, I think the question presented must be decided upon the basis of our statutes and decisions. The real question to be decided, as I construe the complaint, is whether a school district owes a legal duty to pupils attending school to exercise reasonable care in the adoption of the general scheme or plan of the type of the athletic apparatus or appliances to be used and in the selection thereof; and, if so, whether, by virtue of chapter 92, Laws of 1917, p. 332 (Rem. Rev. Stat., § 4706 [P. C. § 4897]), it is absolved from liability if it fails to do so and a pupil using the same is injured as a result thereof. Section 4706 is as follows:

"No action shall be brought or maintained against any school district or its officers for any noncontractual acts or omission of such district, its agents, officers or

employees, relating to any park, playground, or field house, athletic apparatus or appliance, or manual training equipment, whether situated in or about any schoolhouse or elsewhere, owned, operated or maintained by such school district."

It is a general rule that a school district, which is an involuntary corporation organized solely for the public benefit and as a means of carrying out the policy of the state to educate its citizens, is not liable under the doctrine of *respondeat superior* for the negligent acts or omissions of its officers or agents, as, in so doing, it is performing a governmental function; and the operation and maintenance of athletic apparatus and appliances for the physical development of pupils attending its school is a part of its system of education. *Redfield v. School Dist. No. 3,* 48 Wash. 85, 92 Pac. 770; *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D, 792; *Bush v. Quinault School Dist. No. 97,* 1 Wn. (2d) 28, 95 P. (2d) 33; *Casper v. Longview School Dist. No. 122,* 5 Wn. (2d) 403, 105 P. (2d) 503. The rule was changed by statute by the enactment of Rem. Rev. Stat., § 951, which reads as follows:

"An action may be maintained against a county, or other of the public corporations mentioned or described in the preceding section [§ 950, which includes a school district], either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

In a series of cases, this court has construed and applied § 4706 to various kinds of athletic apparatus and appliances and manual training equipment, as well as alleged negligence with reference to supervision of children while playing on or using the

same, which cases are cited in the majority opinion and in *Casper v. Longview School Dist. No. 122, supra.* This court has also held that the statute does not apply to a steel tank left upon a school playground *(Stovall v. Toppenish School Dist. No. 49,* 110 Wash. 97, 188 Pac. 12, 9 A. L. R. 908); to injuries sustained by a student while playing football, though the statute is not specifically referred to in the opinion *(Morris v. Union High School Dist. A,* 160 Wash. 121, 294 Pac. 998); and where injuries were sustained by a boy when a tier of bleacher seats in an athletic field collapsed *(Juntila v. Everett School Dist. No. 24,* 178 Wash. 637, 35 P. (2d) 78). In these cases, it was held that liability existed because of Rem. Rev. Stat., § 951; and, in one of them, it was pointed out that § 951 was still in force except as limited by § 4706.

An examination of our cases will disclose that in none of them was the precise question now before the court raised or decided. As § 951 is not expressly repealed in whole or in part by § 4706, but only limited thereby, they must be read and construed together. Section 951 creates liability of a school district "for an injury to the rights of the plaintiff arising from some act or omission" of such school district, and this includes all acts or omissions of its officers or agents within the scope of their authority. A school district has the authority to provide athletic apparatus and appliances for the physical development of pupils attending school, and, in so doing and in the operation and maintenance thereof, it is its duty (a) to exercise reasonable and ordinary care in the adoption of the general scheme or plan of the type and character of such instrumentalities and the selection thereof, having due regard for the use to which they are to be put and the age and capacity of the pupils to use them with a reasonable degree of safety to

themselves; (b) to exercise reasonable and ordinary care in supervising the pupils while using such instrumentalities, especially in the case of pupils of tender and immature years; and (c) to exercise reasonable and ordinary care in the operation and use of the instrumentalities and to keep them in reasonably good condition and repair.

Section 4706 has absolved school districts from liability for the nonperformance of the two latter duties, but it is quite clear from the terms of the statute itself that the duties and obligations first referred to remain in full force and effect, and it is a violation of these that the appellant complains.

If physical development is a part of education, and we have indicated that it is in *Howard v. Tacoma School Dist. No. 10, supra,* then it would seem that, in its process, a scheme or plan therefor would have to be devised just the same as a course of study is devised, and in this is involved the selection of the instrumentalities with which to carry out such a scheme or plan, and then follows in orderly sequence the operation and maintenance of such instrumentalities. In the exercise of a power and authority, a duty arises to use reasonable care in its execution so that a beneficiary thereof may not suffer harm. Can it be said that a school district, in its plan of physical development of pupils of immature age, would have the legal right to include therein circular saws, drawshaves, hatchets, and the like? Devices for use on school grounds are not merely for amusement, but are, as designated by § 4706, "athletic apparatus or appliance" clearly indicating instrumentalities for physical development.

It will be noticed from a reading of § 4706 that the nonliability has reference only to the *operation or*

*maintenance* of the athletic apparatus or appliances referred to in connection with their use, and says nothing about the original plan or selection of the kinds and types of athletic apparatus or appliances to be provided for use of the school children by the school district. If this statute needs interpretation, we may, under well-established principles, look to its history, the law which it limits, and the evils and mischief to be remedied, give to the words used their ordinary and accepted meaning, and to the statute as a whole that meaning which is most consonant with its policy or obvious purpose, and thus ascertain the legislative intent.

Prior to the passage of § 4706, many actions had been brought against school districts for alleged negligent acts and omissions in connection with the operation and maintenance of athletic apparatus and appliances and manual training equipment, and several were pending while the legislation was under consideration. School districts felt that the right to bring and maintain such actions seriously impaired their ability to carry out a program of physical development and manual training; and, with the view of correcting this situation, the law was enacted. But it is clear that the legislature did not intend to absolve a school district from liability for its acts or omissions in connection with its duty to exercise reasonable care in adopting its plan and its selection of athletic apparatus or appliances, because the first bill introduced on the subject at the 1917 legislative session provided for an amendment to § 951 by a provision as follows:

"Provided, however, that no action can be maintained against any school district, when the cause of action is based upon or arises out of any act or acts done or omitted by such school district in its governmental functions."

This amendment was adopted by the Senate, but was rejected by the House of Representatives, and § 4706 was passed. If the legislature had intended to absolve completely school districts from all liability whatsoever under all circumstances, it, no doubt, would have approved the bill as first passed by the Senate. It is thus evident that the purpose of the legislature was to absolve school districts from liability only in connection with the use, operation, and maintenance of athletic apparatus and appliances.

In its interpretation of § 4706, this court said in *Stovall v. Toppenish School Dist. No. 49, supra,* p. 101:

"It seems clear that the purpose of the legislature was to exonerate school districts from liability for an accident which occurs upon any athletic apparatus or appliance or manual training equipment which is *used* in connection with any park, playground, or field house, owned or maintained by the district." (Italics mine.)

And in *Bush v. Quinault School Dist. No. 97, supra,* p. 35:

"That statute exempts school districts from liability for any and all accidents which occur upon any athletic apparatus or appliance which is *used* in connection with any playground owned or maintained by the school district." (Italics mine.)

And in *Casper v. Longview School Dist. No. 122, supra,* p. 406, in referring to the *Stovall* case, said:

" . . . the court said the effect of the statute was to exonerate school districts from liability only with respect to the *maintenance and operation* of athletic apparatus or appliances or manual training equipment *used* in connection with any park, playground, or field house." (Italics mine.)

These cases are referred to and quoted from because it has been suggested that, since the statute has been construed to be "all-embracing," the word

"owned" as used therein must be included in the limitation of liability. A reading of the statute in connection with these cases may make it seem doubtful as to whether the word "owned" is used in connection with the instrumentalities themselves or the places where they may be located or used, or both; but, in any event, it would not seem that mere passive ownership would have anything to do with the liability created by § 591 or the limitation created by § 4706, and that both statutes relate to acts or omissions in connection with the use, operation, and maintenance of the athletic apparatus and appliances.

We must bear in mind that the legislature, in enacting § 4706, was placing a limitation upon a liability that had existed since 1869, and had become thoroughly imbedded in our jurisprudence, and, hence, it must have used the words "operated or maintained" carefully and advisedly, and did not intend that the limitation of liability should extend beyond that which these words, as applied to athletic apparatus and appliances, fairly import.

I am of the opinion that the complaint, while alleging some acts or omissions that are not actionable, states a cause of action, and that the judgment should be reversed, with instruction to overrule the demurrer.

---

May 4, 1943. Petition for rehearing denied.