Fredia Mildred DAVIS, Plaintiff in Error,

v.

The CITY OF HENRYETTA, Oklahoma, a municipal corporation, Defendant in Error.

No. 40643.

Supreme Court of Oklahoma.

May 18, 1965.

Boatman, Pugsley & Boatman, Okmulgee, for plaintiff in error.

Ernest W. Smith, Henryetta, for defendant in error.

BERRY, Justice.

The physical surroundings from which evolved the action for damages for personal injuries which provide the basis for this appeal are disclosed sufficiently by the following recitation. In point of time all matters are considered as they existed or occurred on August 23, 1960.

In Henryetta, Oklahoma, the 500 Block of Northeast First Street, a north-south thoroughfare, is bounded to the south by Cummings and on the north by Merrick Streets. A streetlight is located at the Merrick intersection, the nearest intersection to the scene of the accident. There are no sidewalks in the 500 Block. There is a concrete and rock drainage ditch to carry off surface water which runs along the west side of the north half of the block and contiguous to the street. This ditch was constructed in 1951 and is approximately 3 feet wide and 3 feet deep. On August 23, 1960, plaintiff resided in an apartment house at 509 Northeast First Street, which was one of two structures on the west side of the north half of the block. Access from the street was over a concrete slab driveway approximately 35 feet wide which bridged the drainage ditch directly in front of the apartment house.

Plaintiff's relatives occupied a home located at the southeast corner of the intersection of Northeast First & Merrick Streets, their house thus being diagonally northeast of plaintiff's apartment. During daylight hours plaintiff had gone to visit her relatives in their home. Upon ending her visit about 10:30 p. m. plaintiff was accompanied out to the street by her sister-in-law who stood and waited for plaintiff to cross Northeast First on the way home. Plaintiff knew of the presence of the ditch along the street in front of the apartment house and had crossed the ditch during her period of residence, both in daylight and in dark, by means of the driveway in front of the building. Proceeding homeward across the street, traveling in a southwesterly direction, plaintiff walked directly into the ditch. As the result of the fall she sustained a broken arm and other injuries for which she was hospitalized upon two occasions. A claim for damages for her injuries and necessary expenses was presented to the City Council and by it denied.

The accident occurred in the dark of night, and by plaintiff's testimony the streetlight was not burning; however, there was no evidence indicating notice to the City that the streetlight was not burning. The evidence did establish that no guardrail,

barricades or safety device were present to warn or guard pedestrians of the ditch.

Plaintiff charged the defendant with negligence in (1) permitting the drainage ditch to be constructed and maintained in proximity to the street so as to constitute a danger to pedestrians traveling in the street; (2) failing to construct guardrails or barricades to protect pedestrians in the area from falling into the ditch; (3) failing to install sufficient streetlights to reveal the dangerous ditch, and in failing to provide maintenance to keep the light burning at all times; (4) failing to install warning lights for protection of pedestrians. The separate and combined acts of negligence were alleged to have been the proximate cause of plaintiff's injuries.

Defendant answered by general denial and further pleaded by way of defense that: (1) the ditch had been constructed several years earlier to collect and drain surface waters in the performance of a governmental function in accordance with an approved plan for public improvement; defendant was without actual or constructive knowledge of any defects or conditions upon which liability for plaintiff's injuries could be predicated; plaintiff's injuries resulted from her own negligence and want of care.

By reply plaintiff denied matters set forth in the answer, and specifically denied defendant's construction and maintenance of the ditch involved exercise of a governmental function which would exempt defendant from liability to those sustaining injury from the open ditch.

The evidentiary matters most favorable to plaintiff's case are as above narrated. Defendant's demurrer at the close of plaintiff's evidence was overruled after the trial court observed that the matter presented a close question.

Defendant introduced evidence to show the ditch had been constructed early in 1951. The W.P.A. had constructed a drainage ditch in the alley running east and west in the 500 Block. The former Superintendent of Public Works testified his duties had included upkeep and repair of the city streets and drainage ditches, and that he had built the ditch in question north from the point where the W.P.A. project had stopped in the alley; a plan was submitted to the City Council and the construction was done with its approval. The plan was not submitted by drawing or in written form, but the matter did receive approval. This testimony was elicited from a witness who was retired at the time of trial and whose testimony provides basis for one contention advanced on appeal.

The Superintendent of Public Works (Cosper), at the time of trial, testified as to actual measurements of the ditch, and that his duties involved maintenance which included cleaning the ditch occasionally since as much as a foot of sediment would be deposited in the ditch. Within approximately 10 years the witness had been in charge of city streets, no complaints or reports had been received relative to a dangerous or hazardous condition.

The City's Police Chief testified he was familiar with the city streets in the particular area, and knew of this drainage ditch. During his tenure in office, over four years prior to trial, no complaints had been received within his knowledge concerning a hazardous condition existing by reason of location of the ditch.

Upon close of all the evidence defendant moved for directed verdict for the reason plaintiff's evidence failed to establish a cause of action against defendant. After hearing argument, the trial court sustained this motion for the reason the evidence showed the construction was done as part of a plan, which was a governmental function for which the municipality was not liable. And, that there was no evidence such construction created a defect so palpably dangerous that a prudent person would allow its continued existence, or that over the years the ditch had been a source of danger to others. The trial court discharged the jury and judgment was entered for defendant upon the motion for directed verdict.

Motion for new trial was overruled and plaintiff brought this appeal.

■ To reverse the judgment plaintiff first contends the basic issue involves the question whether construction of the ditch was carried out in accordance with any plan which was specified and approved prior to the work being done. Plaintiff tacitly admits the force of the rule expressed in Lewis v. City of Tulsa, 179 Okl. 176, 64 P.2d 675, wherein Syllabus 1 states:

"1. A municipality is not liable for negligence or errors in judgment in the adoption of a plan for the construction of a sidewalk; although when a defect created by carrying out the adopted plan and inherent in the plan itself causes a condition so palpably and manifestly unsafe that no prudent man would approve its continued existence, the municipality may be held liable for failure to correct the defect."

The rule stated is an expression of the general rule appearing in 25 Am.Jur., Highways, Sec. 354. In Lewis, supra, this Court noted the recognized limitation upon the rule which appears in the latter portion of the quoted syllabus.

However, plaintiff urges inapplicability of that rule to the present case, because of plaintiff's "strong doubt" as to existence or knowledge of any plan having been adopted or followed in the original construction. It appears defendant secured continuance of this case, predicated upon the City Manager's affidavit of necessity arising from inability to produce certain records thought to have been in possession of the Federal Government, which would show the drainage ditch had been built years earlier by the W.P.A., in accordance with a duly adopted plan for public improvement. At the trial defendant produced no such records, but relied upon the testimony of the former Superintendent of Public Works (Thompson) to establish the approximate date of construction, and that the work was approved and completed under a plan approved by the City Council.

■ Plaintiff's complaint is that if a plan had been adopted and approved the City could have produced testimony of a former council member, or some written record of the plan to establish the fact. Without discussion as to what duty plaintiff may have been under to produce direct evidence upon the question, it is sufficient to observe that this argument raises no issue other than the weight of the evidence. There was direct and uncontroverted testimony that a plan for construction was submitted, approved by the Council, and that construction completed in accordance with this plan. The trial court was privileged to consider the credibility of the witness and the weight to be accorded the evidence upon the issue. Plaintiff's argument in respect to this issue is without substantial merit.

The second contention urges that in the event this Court should conclude a plan for construction was adopted, the judgment must be reversed in view of the rule laid down in City of Holdenville v. Talley, 205 Okl. 693, 240 P.2d 761, which syllabus states:

"Where a municipality in laying out its streets sets apart a plot of ground between the curb line and building line as a parkway such constitutes a part of the street and it is the duty of the municipality to exercise a reasonable degree of care to keep the parkway in a reasonably safe condition for the use of the public and its failure so to do constitutes negligence."

Physical factors present in the Talley case, which supported the conclusion that the City created and maintained a palpably dangerous condition, are not present here. In Talley, supra, a ditch 5 feet deep was maintained in the parkway which, under the law, constitutes a part of the public street. The street was unlighted and the ditch shaded by trees close to the ditch. The ditch was not visible. There were neither guardrails nor warnings. The injured person never had been upon the premises before, and had no knowledge of the existence

of the ditch. Additionally, and to our minds of real importance, persons living in the vicinity had fallen into the ditch on occasions, city authorities had been notified of these occurrences, and demand had been made upon the City to take remedial steps but no action had been taken. The complete dissimilarity in salient facts is so apparent as to obviate need for discussion.

The basis for the result in cases like Talley, supra, was that the construction within the parkway area created a "dangerous situation or condition." Most of our decided cases involves defects in sidewalks or parkways. In the present appeal there is nothing to show the ditch was in the parkway. Thus, the principles enunciated in sidewalk and parkway cases cannot be strictly applicable or controlling here. The construction of this drainage ditch having been accomplished under an approved plan, municipal liability for plaintiff's injury could arise only under the exception recognized in Lewis v. City of Tulsa, supra, in the following manner:

> "(1) Upon consideration of the foregoing authorities from other jurisdictions and the rule as therein announced, we conclude that a municipality of this state is not responsible for errors in judgment in the adoption of a plan for public improvements such as a sidewalk and liability cannot attach by reason of a defect inherent in the plan adopted, unless the condition created by the adoption of such plan and the construction of the improvement in accordance therewith is so palpably and manifestly dangerous that all reasonable men must agree that it was unsafe, in which case the liability attaches by reason of failure to correct rather than by reason of the adoption of the plan."

A precise, legal definition of what constitutes a palpably and manifestly dangerous condition is impossible. "Palpable" is defined as easily perceptible intellectually;

manifest; plain, distinct; obvious; easily perceptible by one or another of the other senses; noticeable, patent. Webster's New International Dictionary (2nd Ed.), p. 1760. "Manifest" is defined as evident to the senses, especially to sight; apparent or distinctly perceived; not obscure or hidden. Ibid, p. 1496. "Dangerous" imparts something beset with danger, full of risk, or perilous. Ibid, p. 667.

A palpably and manifestly dangerous condition, created by construction of the drainage ditch according to plan, would be a noticeable, obvious situation easily perceptible to one of the senses as being fraught with risk, and not obscure or hidden. Applying this definition to the qualification expressed in the quoted rule would require saying that all reasonable men who passed along Northeast First Street readily perceived an obvious danger arising from existence of the ditch. From this it must follow that the ditch was not manifestly dangerous. This is true since the evidence disclosed that within 9 years no pedestrian traveling along the street had complained of, or suffered injury from, the existing, readily perceivable condition. It is our opinion the holding in Lewis v. City of Tulsa, supra, is decisive of the question.

The third contention is based upon the allegation of plaintiff's petition to the effect that the defendant had actual knowledge of the condition, or in the alternative had implied notice by reason of the existence of the dangerous condition over a long period of time.

Plaintiff seeks to bring the case within the rule laid down in City of Hartshorne v. Carlomango, Okl., 287 P.2d 696, upon the basis the Superintendent of Public Works admittedly knew of existence of the ditch and periodically cleaned it out in the course of his normal duties. Plaintiff then asserts defendant wholly failed to offer testimony

to show presence of guardrails, safety devices or warning lights; and failed to introduce evidence to controvert the fact pedestrians traveled the west side of the street. Further, plaintiff says there was no evidence introduced "that the condition of the street was reasonably safe for pedestrian traffic."

█ We are unable to accept this tenuous argument as a basis for reversal of the trial court's judgment. If, as found by the trial court, the drainage ditch was constructed according to an approved plan, the municipal liability could attach only upon the basis of failure or neglect to correct a manifestly dangerous condition. Plaintiff's argument proceeds upon the assumption such dangerous condition existed, and then seeks to require defendant to assume the burden of proving that pedestrians were warned and protected against danger, or that the street was reasonably safe for pedestrians. The burden of proving matters necessary to support recovery belonged to plaintiff, whose evidence was insufficient to discharge this obligation.

Plaintiff quotes and adopts two editorial syllabi from Carlomango, supra, in urging: (1) existence for a long period of a defective condition allows the presumption that the City had actual or implied notice of the condition, although the question of notice was for the jury to determine; (2) existence of defective condition for a long period without others sustaining injury does not preclude recovery, but is only an element for the jury to consider relative to the question of notice. On this basis plaintiff concludes that a dangerous condition is a dangerous condition for the first person injured, as well as to those thereafter injured.

This entire argument rests upon the assumption the ditch in question was palpably and manifestly dangerous, without evidence to support such assumption. It is to be noted also that in Carlomango, supra, no issue was raised or considered as respected the City's immunity from liability for a de-

fect resulting from adoption of a plan. The sole issue concerned negligence and lack of care in maintenance of an unguarded walk, as opposed to asserted contributory negligence. The rules supporting the conclusion reached involved lack of care in maintenance of a public sidewalk, and are not conclusive of situations such as here involved.

The test of liability was stated in Lewis v. City of Tulsa, supra, thus:

"The situation herein involved and the rules of law applicable herein must not be confused with situations in which a proper plan is adopted and there is negligence in the manner in which ministerial officers carry out the plan. In other words, the construction of improvements is a ministerial act, and in that respect it differs from the adoption of a plan pursuant to which the construction work is carried forward. See 13 R.C.L. pp. 95, 96, supra. Thus defects created by errors in construction do not fall within the rule of judicial or legislative immunity herein discussed. Neither should this case be confused with the general rules governing the liability of municipalities for failure to maintain or keep their streets and sidewalks in a proper state of repair. The rule of judicial or legislative immunity does not apply to that class of cases."

No issue was involved concerning failure to maintain or repair. So far as disclosed, the ditch remains in the same condition as when constructed. When the present case is measured by such test, the propriety of the trial court's judgment is apparent.

In City of Ardmore v. Griffin, Okl., 261 P.2d 218, this Court referred to the case as one involving a common situation, where value of abutting property did not warrant large expenditures on streets and sidewalks. and, we stated that to hold the municipality liable in such cases would result in requiring the City to install perfect paving, curbs, gutters and sidewalks, or else do nothing

by way of street improvements. That decision quotes from City of Stroud v. Evans, 187 Okl. 350, 104 P.2d 241, p. 243:

" 'In this case the city had never recognized the need of a sidewalk improvement either at the location mentioned or northward therefrom, and had not invited or sanctioned the use of a walkway along said block by improving same. Circumstances of this nature reduce to a minimum the degree of care to be exercised by the city in the performance of its duty to make and maintain its streets reasonably safe.' "

 We are of the opinion such expressions are applicable to this case. Neither a sidewalk nor parkway is involved. The ditch was constructed as part of an approved plan. Whether the plan was defective for failure to bridge the ditch in areas other than those places where ingress and egress was provided each dwelling, as reflected by plaintiff's photographic exhibits, depends entirely upon whether the construction created a manifestly dangerous condition. Nothing in the record tends to establish this as a fact. In passing upon defendant's motion for directed verdict, the trial court was required to indulge every inference in plaintiff's favor. St. Louis-San Francisco Ry. Co. v. Withers, Okl., 270 P.2d 341. The evidence showed existence of the ditch, plaintiff's familiarity with same, and injury resulting from accidentally falling into the ditch at a point other than where provision had been made for pedestrian travel in safety. The trial court's actions in sustaining the motion for directed verdict was correct. Downtown Chevrolet Co. v. Lehman, 191 Okl. 319, 129 P.2d 578, and cases cited.

Judgment affirmed.

. HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and HODGES, JJ., concur.