ST. LOUIS, I. M. & S. R. CO. v. GIBSON.

No. 4559. Opinion Filed June 29, 1915.

(150 Pac. 465.)

1. **RAILROADS—Person Crossing Track—Action for Death—Right to Recover.** Where plaintiff's evidence shows that deceased was standing to one side of the railroad track, in a place of safety, and knew that a train was approaching, and had waited to see the train pass, and suddenly attempted to run across the track, immediately in front of, and in full view of, a moving train, and was struck by the train before he could run across the track, the company could not be liable, and a demurrer to the evidence should have been sustained.

2. **SAME—Negligence of Trainmen.** The employees of a railroad company, seeing a person standing to one side of the track, in a place of safety, are not negligent in assuming that he will remain in that place of safety, and not heedlessly run upon the track, in front of moving cars. And if he does so, and it is impossible to stop the train, in time to avoid killing him, the company cannot be held liable for his death.

3. **SAME—Question for Jury.** Where the employees of a railroad company, on approaching a crossing, fail to ring the bell and sound the whistle, if the evidence leaves a doubt as to whether the deceased saw the train, or knew that it was approaching, then the failure of defendant to ring the bell and sound the whistle would raise a question to be submitted to the jury as to whether or not that failure was the cause of his going upon the track, and thereby losing his life. But when plaintiff's own evidence is that deceased had waited to see the train pass, knew it was approaching, and ran upon the track immediately in front

of and in full view of the moving cars, it could not be said the failure to ring the bell and sound the whistle was in any manner responsible for his going upon the track, and there is no question, on that phase of the case, to submit to the jury.

(Syllabus by Brett, C.)

*Error from District Court, Muskogee County; R. P. de Graffenried, Judge.*

Action by C. J. Gibson as an individual and as administrator, against the St. Louis, Iron Mountain & Southern Railroad Company, a corporation. Judgment for plaintiff, and defendant brings error. Reversed.

*Thomas B. Pryor* and *W. L. Curtis,* for plaintiff in error.

*S. H. Lattimore,* for defendant in error.

Opinion by BRETT, C. In this case C. J. Gibson, who was plaintiff below, filed suit to recover damages of the St. Louis, Iron Mountain & Southern Railroad Company for the death of his minor son, who, it is alleged, was negligently killed by one of defendant's passenger trains. The parties will be referred to as they appeared in the lower court. Trial was had to the court and jury, which resulted in judgment for plaintiff for $1,200, and defendant appeals to this court.

The material facts as developed by the evidence for plaintiff, briefly stated, are that Clifford Gibson, the deceased, who was 13 years old, and Tom Gibson, a brother, who was about 12 years old, had gone from their home to the home of an aunt, who lived about a mile from their home. To reach their aunt's house, they had to cross the railroad at a country crossing. And on returning, when they reached the railroad track at this crossing, they heard a train coming. They could only see the smoke of the engine coming over the hill when they first heard it.

Clifford proposed to Tom that they stand on opposite sides of the track and see the people as they passed. As the train was approaching, Clifford attempted to run across the track to where his brother, Tom, was standing, and in running across the track was struck by the train and killed instantly. At the close of plaintiff's evidence, defendant demurred to the evidence, which was by the court overruled, and defendant assigns this ruling of the court as error. There are a number of assignments of error, but we will consider this one first.

The defendant's liability in this case was based upon negligence. And if the defendant was negligent, and there was any evidence which reasonably tended to establish a causal connection between that negligence and the death of deceased, then it should have been submitted to the jury, but, if there was no such evidence, then it was error for the court not to sustain the demurrer. In other words, if there was any evidence that tended to show that the death of plaintiff's son was caused by the carelessness and negligence of the defendant, or that the defendant, after it discovered his peril, by the exercise of ordinary care and diligence could have prevented the accident and saved his life, then that evidence should have been submitted to the jury; but, if there was no such evidence, the court should have sustained the demurrer.

Upon the vital question in the case as to how the accident occurred, and what happened immediately prior to and at the moment of the accident, Tom Gibson testified on direct examination in response to questions propounded by plaintiff's counsel as follows:

"Q. Did you see your brother as he started to come across the track as the train approached? A. Yes, sir. Q. What did your brother do when you saw him? A. He

just started to run. Q. Started to run? A. Yes, sir. Q. You saw him struck by the train? A. Yes, sir. Q. Did you go where your brother was lying? A. Yes, sir. Q. Were you the first one there? A. Yes, sir."

And his cross-examination on this point is but a reiteration of the same. But we will copy the testimony. It is as follows:

"Q. And he came running towards you? A. Yes, sir. Q. And the train was in full view coming down the hill? A. Yes, sir. * * * Q. You don't know how far the train was back up the track when Clifford started running across; all you know is when he started across the train struck him? A. Yes, sir. * * * Q. You just know from your own recollection Clifford started running across the track, and the train struck him? A. Yes, sir. Q. You can't tell just how far the train was back up the track when he started to run across? A. No, sir; not just exactly how far it was. Q. You say it was Clifford's intention, I believe, for you to see the people on one side and for him to see the people on the other side, and that is why you were on different sides of the track? A. Yes, sir."

He was the only witness introduced by the plaintiff who testified as to how the accident happened, and his testimony constituted the whole of the evidence offered by plaintiff as to the circusmtances under which the accident occurred.

Then the question for us to determine, under this assignment, is: Does that evidence, with all the inferences which the jury could justifiably draw from it, reasonably tend to show negligence on the part of the defendant, or that the defendant could have avoided the accident after the peril of the deceased became apparent?

The circumstances surrounding this accident are such as naturally appeal to one's sympathy; but, as a matter

of law and fact, we are unable to see how, from this evidence, the death of the deceased could be chargeable to negligence of defendant, or how it could have avoided the accident after the peril of the deceased became apparent. He was standing off to one side of the railroad track in a place of safety, and without any notice or warning started to run to the opposite side of the track, where his brother was standing; and, before he could clear the track and get across to the other side, the train was upon him, and struck him. According to this evidence, he undoubtedly ran upon the track suddenly, and the train at that time could only have been a short distance from him, since, although in a run, he was unable to cross the track before the train reached him. The defendant could not be said to be negligent in assuming that he would remain in a place of safety, to the side of the track where he first stood. And after he ran upon the track it would have been a physical impossibility to stop the train in time to avoid the accident.

In *Johnson's Adm'r. v. Louisville & N. R. Co.*, 91 Ky. 651, 25 S. W. 754, a case very much in point upon this proposition, the court says:

"Even if it was shown that the deceased was or could have been seen, before he reached the track, in time to have enabled those in charge to stop the train, they would not have been required to do so, having the right to presume that he would not heedlessly go upon the track in full view of the train. The duty and obligation, on their part, to endeavor to check the train, arose only after he got on the track, when it was too late, and they were powerless to do so."

In *Railway Co. v. Cullen*, 54 Ark. 431, 16 S. W. 169, the court uses the following language:

"The uncontroverted facts left the jury no latitude, save to find that Cullen knew of the close proximity of the train, and, in reckless disregard of his safety, took the hazard of the leap across the track in front of the engine, or else failed to look or listen for the train when he knew it was approaching the crossing, and when, if he had used his senses, he could not have failed both to hear and see it. His injury was therefore the result of his recklessness or of his own culpable negligence. As the testimony shows that the injury could not have been prevented by the train men after the plaintiff's perilous condition was discovered, either alternative would deprive him of the right to complain of the conduct of the railway."

33 Cyc. 1049, lays down the general rule, which we find supported by the courts that have passed upon the question, as follows:

"Mere knowledge of the presence of a person on or near a crossing, without knowledge of his actual peril, does not make a railroad company responsible for its failure to avoid injuring him, since the railroad company has a right to presume, in the absence of knowledge to the contrary, that a person seen on or near a crossing is *sui juris* and will exercise ordinary care in stopping or in retiring to a place of safety in time to avoid being injured." *Crane v. Missouri Pacific*, 89 Kan. 472, 131 Pac. 1188: *Burrow v. Idaho & W. N. R. R. Co.*, 24 Idaho, 652, 135 Pac. 838; *St. Louis v. Tucka*, 95 Ark. 190, 129 S. W. 541; *Chespeake & O. R. R. Co. et al. v. Burbour's Adm'r.* (Ky.), 93 S. W. 24; *Ill. Central v. Ackerman*, 144 Fed. 959, 76 C. C. A. 13; *Fleenor v. Oregon Short Line R. R. Co.*, 16 Idaho, 781, 102 Pac. 897; *Bates v. San Pedro, L. A. & S. L. R. R. Co.*, 38 Utah, 568, 114 Pac. 527.

But there is one other question to be considered: Plaintiff's evidence developed the fact that the defendant did not ring the bell or sound the whistle on approaching the crossing where the deceased was killed. Then would that evidence, under the circumstances of this case, sug-

gest a causal connection between the death of the deceased and this failure of defendant? If the evidence had left a doubt as to whether or not deceased saw the train, or knew that it was approaching, then the failure of defendant to ring the bell and sound the whistle would have raised a question as to whether that failure was not the cause of his going upon the track, and thereby losing his life. But the plaintiff's own witness testifies that deceased had waited to see the train pass, and ran upon the track with the train in full view. It cannot be said with any degree of reason that the fact that he ran upon the track was due to this failure of defendant.

In *Doublin R. R. Co. v. Slattery,* 3 Appeal Cases, 1155, we find the following language:

"If a railway train, which ought to whistle when passing through a station, were to pass through without whistling, and a man were, in broad daylight, and without anything either in the structure or the line or otherwise, to obstruct his view, to cross in front of the advancing train and be killed, I should think the judge ought to tell the jury that it was the folly and recklessness of the man, and not the carelessness of the company, which caused his death. * * * The jury could not be allowed to connect the carelessness in not whistling, with the accident to the man who rushed, with his eyes open, on his own destruction."

In *Railroad Co. v. Houston,* 95 U. S. 697, 24 L. Ed. 542, a case very much in point, the court says:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employee in these particulars was no excuse for negligence on her part. * * * Had she used her senses, she could not have failed both to hear and to see the train which was

coming. * * * If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure."

The rule of law is well settled that if the evidence of the plaintiff, with all the inferences which the jury could justifiably draw from it, fails to establish a cause of action on behalf of the plaintiff, it is the duty of the trial judge to sustain a demurrer to the evidence, when interposed. We think the evidence in this case wholly fails to establish the plaintiff's cause of action, and that the demurrer should have been sustained.

We therefore recommend that the judgment be reversed, and the cause remanded, for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.