KURN et al. v. MAXWELL.

No. 31248. April 4, 1944.

Rehearing Denied Sept. 12, 1944.

*151 P. 2d 386.*

M. G. Roberts, of St. Louis, Mo., Bruce, Satterfield & Grigsby and Ben Franklin, all of Oklahoma City, and Welch & Welch, of Madill, for plaintiffs in error.

Sam Y. Colby, of Madill, for defendant in error.

ARNOLD, J. Herman Maxwell brought this action in the district court of Marshall county for personal injuries received by him when a train belonging to and operated by the defendants ran into the side of the car operated by him. The trial resulted in a verdict for the plaintiff in the sum of $1,250. The trial court overruled the motion for new trial and reduced the judgment to $600. Thereafter, upon reconsideration of the motion for new trial, the court vacated this order reducing the judgment, overruled the motion for new trial and entered judgment in accordance with the verdict, provoking this appeal. The parties will be referred to herein as they appeared in the trial court.

The uncontroverted facts material to the issues in this case are that the defendants' railroad runs north and south across Main street and through the town of Madill. Four tracks of the defendant railway system run across said street. The so-called Ardmore passenger motor train was standing approximately 50 feet south of Main street when the plaintiff approached the track area of the railway company 250 to 300 feet west of the track on which the passenger train was standing. The plaintiff was approaching said track at a speed of 20 to 25 miles per hour. He looked to the south and observed the train standing on the Ardmore track. He looked to the north and observed that the track area was clear in that direction. He did not thereafter look to the south nor further observe the passenger train.

Plaintiff testified that the bell did not ring and the horn did not sound and the whistle did not blow; that he did not again see the train until just immediately before it collided with his automobile, at which time he swerved to the right. Another witness, testifying in behalf of the plaintiff, said that he had crossed the tracks of the railroad company and was walking west when he heard a crash; that he did not hear a bell ring or a whistle sound, but that he was not paying any particular attention; that the train pushed the automobile of plaintiff about 60 feet.

The plaintiff testified that he was an able-bodied man prior to the accident; that his shoulder was hurt in the collision, and that his arm and shoulder are weak and he cannot lift with his arm; that he develops headaches and becomes faint and dizzy when he works; that he received a blow on his head which produced a cut that required six stitches.

Dr. Holland, who attended the plaintiff immediately after the accident and made several examinations of him thereafter, testified that he was the railroad company's doctor in the Madill community; that when he saw him the plaintiff was dazed and unconscious and did not know what he was doing; that he had quite a cut and bruise at the right mastoid; that such an injury could be permanent; that it could cause dizzy spells; that plaintiff complained about his arm and shoulder and complained that he had dizzy spells; that traumatic neuritis could result from a traumatic injury to the shoulder and could produce partial loss of use of the shoulder or arm; that plaintiff suffered considerable shock from the collision and as a result thereof vomited until midnight.

All of the train crew and other employees of the railway company and other witnesses testified that the automatic bell of the train was ringing constantly from the time the train came into the yards until the collision occurred, and that the horn was sounded four times when the train started mov-

ing from its standing position toward Main street, and the testimony offered on the part of the defendants and not controverted is almost, if not, conclusive to the effect that the train was proceeding at a rate of from four to six miles per hour when the collision occurred.

The court instructed the jury that the acts of negligence relied upon by the plaintiff were the failure of the engineer operating said train to blow his whistle or horn or ring the bell or give any other signal or warning of approach of the train. The court stated to the jury that plaintiff's injuries were alleged by him to be the direct result of such carelessness and negligence of the defendants. The court further told the jury that the burden was on the plaintiff to prove, by a fair preponderance of the testimony, all the material allegations made. The court correctly defined negligence to the jury and it correctly defined and applied the law of contributory negligence. The jury was told by the court that if the defendants operated the train in a careless and negligent manner, and that by so operating the train in a careless and negligent manner the plaintiff received injuries by virtue of a collision through no fault of his, then the verdict should be for the plaintiff in such an amount as would compensate him for the physical pain and suffering that he had endured, not to exceed the amount sued for.

No instructions were requested by either party and no objections made nor exceptions saved by either party to any of the instructions given.

The first contention made by the defendants is that:

"There were no questions of fact for the determination of the jury in this case for the reason that no primary negligence was shown, and the physical facts conclusively show that the proximate cause of the accident was plaintiff's own acts."

It will be observed from what has been said and from the court's instructions that liability in this case must depend upon the failure to blow the whistle or ring the bell. The defendants take the position in arguing the above proposition that even though the engineer failed to give the proper warning signals, the uncontroverted facts disclose that the plaintiff's own negligence was the proximate cause of the collision. This contention is predicated upon the plaintiff's testimony that after seeing the train standing on the track he proceeded to the track without again looking in the direction of the train, under circumstances wherein his view was unobstructed; that this being true, the plaintiff's own negligence must necessarily have been the proximate cause of the collision, and except for his negligence the collision could not have occurred regardless of the failure of the engineer to sound the whistle or ring the bell.

The defendants rely upon Bash v. Baltimore & O. R. Co., 102 Fed. 2d 48; Kurn et al. v. Jones, 187 Okla. 94, 101 P. 2d 242; Missouri, K. & T. Ry Co. v. Flowers, 187 Okla. 158, 101 P. 2d 816; St. Louis, I. M. & S. R. Co. v. Gibson, 48 Okla. 553, 150 P. 465; Chicago, R. I. & P. Ry. Co. v. Barton, 58 Okla. 109, 159 P. 250; Missouri Pac. R. Co. v. Merritt, 104 Okla. 77, 230 P. 513; Severy v. Chicago, R. I. & P. Ry. Co., 6 Okla. 153, 50 P. 162; Missouri Pac. R. Co. et al. v. Hood, 199 Ark. 520, 135 S. W. 2d 329. A careful check of each of the cited cases will disclose that by reason of the facts in each, they are distinguishable from the case at bar. In those cases the train was either moving in plain and unobstructed view or was standing on the tracks across the road in plain view. No negligent acts were proven or the negligent acts shown were not the proximate cause.

In the case at bar we have a very different fact situation. Here the train was standing approximately 50 feet south of the crossing at the time plaintiff saw it. Plaintiff says he looked to the north and the track was clear; without slowing down or again looking in the direction of the train, he proceeded to and upon the track where his car was struck approximately seven or eight seconds

after he observed the standing train. Assuming this state of facts, the train must have started moving within a second or so after plaintiff had seen it standing on the track. The rate of speed at which the train was traveling would bring it in contact with the car driven by the plaintiff, at the speed it was being driven, within seven or eight seconds.

Signals warning of the approach of a train to a crossing are given for the purpose of apprising others of the approach of the train. If knowledge of the approach of a train is already had, the giving of such signals might not serve any useful purpose and the failure to give them might not be the proximate cause of a collision. Proximate cause is an essential element of actionable negligence, and if same does not exist, there can be no liability. If the jury believed the testimony of the plaintiff, thereby excluding the testimony of the defendants as to whether the bell was ringing or the whistle blown, and they might reasonably have done so, and if the jury concluded that the giving of such signals would have apprised the plaintiff of the approach of the train in time for him to have avoided the collision, then the failure to give such signals could have been the proximate cause of the collision. We think, and therefore hold, that the fact situation presented by the plaintiff is one on which reasonable minds might differ as to the existence of negligence and the proximate relationship thereof to the injuries sustained. This being true, the negligence of the plaintiff, if any, could at most be a contributing factor in the face of a determination by the jury that the negligence of the defendants in these regards was the proximate cause of the collision and the resulting injuries. The defense of contributory negligence must always be submitted to the jury and its determination thereof is binding on the trial court and this court on appeal. Article 23, sec. 6, Constitution.

The defendants next contend:

"The trial court recognized that the verdict was not sustained by sufficient evidence and that the damages were excessive and was in error in refusing to grant a new trial."

A portion of the facts relevant to this issue have heretofore been disclosed; however, in this connection it should further be pointed out that the journal entry of judgment in this case contained the following:

". . . and being fully advised in the premises, the court expressed his opinion that the verdict of the jury in the sum of $1,250.00 was excessive and that the verdict should be reduced in the amount of $650.00 to the sum of $600.00, and that the motion for new trial should be overruled, to which action both the plaintiff and the defendants took and were allowed exceptions, . . ."

"Thereafter, and on the 17th day of August, 1942, the matter came on for hearing upon the settlement of Journal Entry of Judgment, and the court concluded that he had exceeded his authority in making the original order reducing the amount of the verdict, and the court vacated the order entered on the 13th day of July, 1942, and overruled the defendants' motion for a new trial, to which action of the court the defendants then and there excepted, and such exceptions were allowed by the court. . . ."

The foregoing facts indicate unmistakably that the trial court entertained the view all the time that the verdict of the jury was excessive. The defendants' contention that the motion for new trial should have been sustained because the trial court entertained such view is not well taken. If a verdict of a jury does not meet with the affirmative, considerate approval of the *mind* and conscience of the court, and it cannot conscientiously and honestly approve same, the verdict should not, where challenged, be permitted to stand. See Hogan v. Bailey, 27 Okla. 15, 110 P. 890.

On a motion for new trial which challenges the verdict of the jury upon the ground that it is contrary to the evidence and is excessive, the trial court must weigh the evidence and either approve or disapprove the verdict, and if

340

the court cannot conscientiously and honestly approve the verdict, it must set it aside and grant a new trial unless a remittitur accepted by the plaintiff remedies the fault. Chicago, R. I. & P. Ry. Co. v. Wainscott, 103 Okla. 187, 229 P. 808.

We do not think that the foregoing facts indicate that the trial court could not conscientiously approve the verdict. On the contrary, these facts affirmatively show that the reason for the court vacating its former order, which had for its purpose a reduction in the amount of the verdict, was the judge's recognition of lack of authority to do so. We must presume that the trial court knew that it was its duty to set the verdict aside and grant a new trial if the amount thereof was so excessive as to be shocking to its conscience. So, therefore, it must be presumed, where a court recognizes a judgment that has the effect of sustaining a jury verdict, that the court approves same unless it is shown by positive proof to the contrary that the trial court did not weigh the evidence or that it did in fact disapprove the verdict because it was so excessive that it could not conscientiously sustain same. It is not enough that the judge's opinion as to what the amount of the verdict should be is at variance with the determination of the jury. It is apparent that the court weighed the evidence and determined thereby that the verdict was excessive upon the original consideration of the motion for new trial. There is no contention made that upon the original consideration of the motion for new trial the court did not weigh the evidence. On the contrary, it is stoutly maintained that the court weighed the evidence and upon consideration thereof disapproved the verdict. Upon reconsideration of the motion the court vacated its former order of reduction in the amount of the verdict

on the correct recognition that it had no authority to reduce same without the consent of the offended party. Then the court approved the verdict of the jury by signing the journal entry of judgment.

It is inferentially contended that the journal entry discloses the reason for vacating the order of reduction at the time the motion for new trial was originally overruled, and that this shows that the court did not weigh the evidence upon reconsideration of the motion for new trial, but rather approved the verdict because it entertained the idea that there was no other way to accomplish a reduction. However, we must presume that courts do not sustain verdicts which they cannot conscientiously and honestly approve.

We observe that the defendants do not argue that the testimony of plaintiff as to his injuries shows that the verdict was grossly excessive, but predicate their argument in this respect entirely upon the facts surrounding the trial court's action in relation to the motion for new trial and the entry of judgment. Consideration will be given this circumstance and the testimony disclosed by the record as to the injuries sustained in determining whether the trial court did, in fact, approve or disapprove the verdict of the jury.

In view of all the circumstances, we conclude that the trial judge in final analysis surrendered his personal opinion of what the verdict of the jury should have been and accepted that of the jury. To do so does not violate the rule announced. See National Tank Co. v. Scott, 191 Okla. 613, 130 P. 2d 316.

Judgment affirmed.

GIBSON, V.C.J., and RILEY, OSBORN, WELCH, HURST, and DAVISON, JJ., concur.