KANSAS, OKLAHOMA & GULF RY. CO. v. COLLINS.

No. 34693. Oct. 28, 1952.

Rehearing Denied Dec. 16, 1952.

*251 P. 2d 178.*

568

Chas. P. Gotwals and James D. Gibson, Muskogee, and Anglin & Stevenson, Holdenville, for plaintiff in error.

Gomer Smith and Gomer Smith, Jr., Oklahoma City, for defendant in error.

BINGAMAN, J. This is an action for damages for wrongful death brought by the plaintiff, Martha Elner Collins, administratrix of the estate of James Edward Collins, deceased, against the Kansas, Oklahoma & Gulf Railway Company. The trial court submitted the cause to a jury, which returned a verdict for plaintiff, and defendant appeals.

From the record it appears that the deceased, who was 73 years old at the time he was killed, was driving a pick-up truck on a country road which crossed the railroad tracks of the defendant between a quarter and a half mile south of the town of Clarita, in Coal county. The country was level, the railroad tracks were elevated above the surrounding land some seven feet, and the day, July 11, 1947, was clear. The accident occurred about 3:10 p.m., as a result of a collision at said crossing between the pickup truck of the deceased and the motor train of the defendant, which was proceeding south from Clarita. Testimony of the witnesses for the defendant was to the effect that the truck struck the side of the train, while testimony of witnesses for the plaintiff was that the train struck the truck. So far as the record discloses deceased's view of the train from the time it left Clarita was clear and unobstructed, although there is some testimony that high weeds and Johnson grass growing along the side of the road might have to some extent obstructed the view. The testimony as to whether the motor train whistle was blown and the bell rung before it approached the crossing is conflicting, witnesses for the defendant testifying that the whistle was blown and the bell rung, while witnesses for plaintiff who were in a position to hear testified to the contrary.

On appeal defendant first contends that there was no valid service of summons upon it for the reason that alias summons issued by the clerk, without an order of the court, was invalid since the summons which preceded the issuance of the alias summons was not

returned showing that the defendant was not summoned. The record shows that the original summons was issued to the sheriff of Muskogee county and served on E. B. Harper, the service agent and the person in charge of defendant's business at Muskogee. Upon a motion to quash this summons being filed plaintiff procured the clerk to issue an alias summons to the sheriff of Coal county. This alias summons when issued was defective in that it showed that the clerk had issued the same from his office in Oklahoma City, Oklahoma. Upon a motion to quash this summons being filed plaintiff procured the clerk to issue another alias summons which was properly served.

Defendant calls attention to the fact that the summons and the first alias summons issued were insufficient to confer jurisdiction on the court, but says that under 12 O. S. 1951 §157, an alias summons may be issued by the clerk without a court order only when the preceding summons is returned "not summoned". We do not agree.

In Keaton v. Taylor, 114 Okla. 167, 245 P. 56, the summons was returned to the clerk's office without the return being filled out in any manner, and we held that in such case the clerk could issue an alias summons without a court order directing ·him to do so. In Southern Surety Co. v. Jones, 90 Okla. 285, 214 P. 727, we held that where a summons was returned showing service upon an unauthorized person, or not in the manner and time prescribed by the statutes, the clerk was authorized to issue an alias summons without an order of court. Under these decisions the clerk in the instant case was not required to procure an order of court before issuing the alias summons.

In its second and third contentions defendant asserts that the conduct of the deceased was the proximate cause of the injury and that the verdict is contrary to the evidence so showing.

We think the evidence in this regard justified the trial court in submitting the cause to the jury. It must be borne in mind that, as above stated, the evidence as to whether or not the whistle was blown or bell rung when the train approached the crossing is in conflict. The only eyewitness to the accident was a passenger on the train who testified that he saw the deceased driving towards the crossing at a speed of ten or fifteen miles per hour, which was approximately the speed of the train, and that the deceased apparently made no effort too slacken his speed but was looking down as though he were reading something on his steering wheel and ran into the side of the train. But if this evidence established that the decedent was negligent, the evidence on the part of plaintiff that the whistle was not blown and the bell was not rung as the train approached the crossing is evidence that the railroad was also negligent. And the question of whether the negligence of deceased or the railroad was the proximate cause of the collision was a matter of fact for the jury to determine.

In Kurn v. Maxwell, 194 Okla. 336, 151 P. 2d 386, we pointed out that if knowledge of the approach of the train was already had by the deceased, the ringing of the bell or sounding of the whistle would not serve any useful purpose, and the failure to give these signals might not be the proximate cause of the collision. We further said that if the jury believed that the signals were not given, and concluded that the giving of such signals would have apprised the plaintiff in that case of the approach of the train in sufficient time for him to have avoided the collision, then the failure to give such signals would have been the proximate cause of the collision, and that the question was one of fact for the jury. A somewhat similar case in which the same rule was observed is Chicago, Rock Island & Pacific R. Co. v. Richerson, 185 Okla. 560, 94 P. 2d 934. In that case we held that it was the duty of the defendant to warn plaintiff of the train's approach, and that even if the plaintiff was shown to be at fault the question of proximate cause was

for the jury. See, also, Oklahoma City-Ada-Atoka Ry. Co. v. Swink, 186 Okla. 292, 97 P. 2d 72. In Missouri-Pacific R. Co. v. Merritt, 104 Okla. 77, 230 P. 513, cited by defendant, the plaintiff admitted that he heard the whistle blown, and in Missouri-Kansas & Texas R. Co. v. Flowers, 187 Okla. 158, 101 P. 2d 816, it appears that the defendant's train was across the road, completely blocking it, before the driver of the truck involved in the collision reached the crossing. The trial court did not err in submitting the case to the jury.

However, we think the giving of instruction No. 11, by the court, was an error which requires reversal of the cause. By that instruction the jury was told that if it found and believed from the evidence that the conditions at the intersection and the public use of the highway at that point were such that ordinary care required of the defendant that it install automatic bells or signals at the intersection, and that if they found that the failure to install and maintain such automatic bells and signals was the direct and proximate cause of the accident, and that the deceased was in the exercise of ordinary care for his own safety, then their verdict should be for the plaintiff.

The only evidence produced by plaintiff in this regard was that the road was much traveled by farmers. It was not a state highway but an ordinary country road, and the vision of one approaching the intersection was practically unobstructed. There was no hazardous condition shown to exist which would justify the giving of such instruction.

In Oklahoma Union Ry. Co. v. Lynch, 115 Okla. 146, 242 P. 176, and in other cases where hazardous conditions were shown to exist, the giving of such instruction has been approved.

In St. Louis-San Francisco Ry. Co. v. Thompson, 139 Okla. 142, 281 P. 565, we announced the rule governing the giving of such instruction, stating that where a crossing was unusually dangerous because of its peculiar construction and situation, it was the duty of the railway company to exercise such care and take such precaution as the dangerous nature of the crossing required. In St. Louis-San Francisco Ry. Co. v. Prince, 145 Okla. 194, 291 P. 973, we quoted with approval from St. Louis-San Francisco Ry. Co. v. Rundell, 108 Okla. 132, 235 P. 491, to the effect that while railroad companies owed the public the duty of maintaining a flagman, a system of automatic bells or other safeguards in towns and cities at crossings which were unusually dangerous or attended with more than ordinary hazard, it could not be said that they owed the public this duty at ordinary crossings in the country where there could be no unusual danger or extraordinary hazard. No such condition existed in the instant case and the giving of such instruction was not justified by any evidence in the record.

Defendant complains of various other alleged errors occurring during the trial, but since these may not occur when a new trial is had we consider it unnecessary to pass upon them.

Reversed, with directions to grant defendant a new trial.

HALLEY, V. C. J., and GIBSON, JOHNSON, and O'NEAL, JJ., concur. WELCH, CORN, and DAVISON, JJ., dissent.