WILLIAMS v. TERBUSH et al.

No. 35176. March 3, 1953.

Rehearing Denied April 28, 1953.

*256 P. 2d 434.*

Bryan Billings, Woodward, for plaintiff in error.

Sparks, Boatman & Wybrant, Woodward, for defendants in error.

BLACKBIRD, J. This is an action originally brought by Lee H. Williams against Tom Terbush and Harold Wells to recover damages alleged to have been sustained as a result of a car collision between a Chevrolet passenger car owned by William Laird and driven by him and a Studebaker dump truck owned by Tom Terbush and driven by Wells.

Mr. Williams was riding as a guest in the Chevrolet car at the time the collision occurred. It is stipulated that Lee Williams died on July 24, 1950, and that Ethel Williams was appointed administratrix of his estate and the action was thereafter revived in her name as administratrix. It is further stipulated that Lee Williams' death was not caused by injuries received as a result of the collision but that he died of natural causes.

It is agreed that the collision occurred at about 5:30 in the morning of the 17th of April, 1950. The evidence shows that on that morning Lee Williams, Donald Williams, Fay Shoat, and William Laird left Woodward, Oklahoma, for Bucklin, Kansas, where all three were employed by a construction company. It was still dark at the time they left and misty and foggy. Visibility was from zero to about twenty feet. They were traveling west and when they reached a point of about three and one-half miles east of the town of Supply they overtook a bread truck traveling in the same direction. They followed the truck for about three-fourths of a mile At that point the highway was gradually sloping upward. Mr. Laird, driver of the Chevrolet car, testified that when he reached a point at the top of this slope he turned to the left in order to pass the bread truck; as he did so he saw three yellow or red lights. He assumed they were lights on some car traveling in the same direction he was traveling. He paid no attention to the lights but proceeded in his attempt to pass the bread truck. When his car reached a point alongside the cab of the bread truck he observed a truck approaching him from the west traveling east. He immediately applied his brakes in an attempt to stop but his car skidded into the truck. He further testified that at the time the truck was located off the pavement on the south side of the highway and the left wheels resting on the shoulder. He was traveling about fifty miles per hour in attempting to pass the bread truck and when he applied the brakes. Donald Williams testified that as Mr. Laird turned to the left to pass the bread

truck he saw two lights which appeared to him to be lights on each side of the cab of some motor vehicle. Fay Shoat testified that when Mr. Laird started to turn to the left to pass the bread truck he observed two dim lights that appeared to be on ahead (evidently meaning on the front of some approaching vehicle). He then shouted, "Look out, Bill." Laird immediately applied his brakes and his car skidded into the truck. These witnesses all testifed that the headlights on the approaching truck were not burning.

Defendant Wells testified that at about 4:45 on the morning the collision occurred he and Gene Minor left Laverne, Oklahoma, in a Studebaker dump truck; they intended to go to Woodward, Oklahoma, for the purpose of hauling gravel. He agreed in his testimony that the weather conditions were as testified to by plaintiff. He testified that the headlights on his truck were burning all the way and the truck was also lighted with clearance lights, one on each side of the cab; that they were traveling east; the truck was owned by defendant Terbush and he was employed by Terbush to drive the truck for him. When he reached a point close to where the collision occurred he dimmed his lights and as he did so he saw the Chevrolet car attempting to pass the bread truck. He immediately swung his truck to the right off the pavement and stopped the truck on the shoulder. Immediately after the collision occurred he turned off the lights. The clearance lights at the sides of the cab and the headlights on the front were on the same switch and neither could be turned off or on without at the the same time turning off or on all of the lights. Gene Minor testified in substance to the same state of facts as did Mr. Wells.

A patrolman who arrived at the scene shortly after the collision occurred testified that the pavement was still wet and he saw skid marks leading from the point where the brakes of the Chevrolet car were applied along and across the left side of the highway where it skidded into the truck. He inspected the lights on defendant's truck and they were all working in proper order both on light and dim beam; that the clearance lights and headlights were on the same switch.

The only act of negligence attempted to be established by plaintiff was the negligence of the driver of the truck in driving without displaying burning headlights as provided by statute, 47 O.S. 1951 §148, subsections b and g.

The trial was to a jury resulting in a verdict in favor of defendants. Judgment was rendered accordingly.

Plaintiff appeals and relies for reversal on error of the court in instructions given and in refusing to give certain requested instructions.

Plaintiff requested the court to give, among others, the following instruction:

"You are further instructed that the negligence, if any, of the driver of the automobile in which Lee H. Williams was riding, is not imputable to the said Lee H. Williams, and in this connection you are instructed if you believe from a preponderance of the evidence that William Franklin Laird, driver of the Chevrolet car in which Lee H. Williams was riding, was guilty of negligence at the time of the collision in question, and you further believe from a preponderance of the evidence that the said defendant, Harold Wells, was also guilty of negligence as heretofore defined to you, and such negligence on the part of William Franklin Laird, if any, and such negligence on the part of Harold Wells, if any, concurred to directly and proximately cause Lee H. Williams' injuries, and damages, if any, then your verdict should be for the plaintiff."

There is evidence from which the jury might have found that both the driver of the Chevrolet car and the driver of the Studebaker truck were guilty of negligence, that the separate negligence of either was not the sole proximate cause of the injuries and resulting damages sustained by Lee H. Williams, but that the concurrent or combined negligence of both was the

direct and proximate cause thereof. Conceding arguendo that an instruction as to such concurring negligence would have been proper in this case, yet the question remains, was it reversible error under the circumstances here presented? One of the instructions requested by the plaintiff and given by the court was No. 15, which reads as follows:

"You are further instructed that although the negligence, if any, of the driver of the Chevrolet car in which Lee H. Williams was riding, towit, William Franklin Laird, was not imputable to the plaintiff's decedent, Lee H. Williams, yet if you find from the evidence that the injuries of Lee H. Williams were caused wholly and solely by the negligence of the said William Franklin Laird, the driver of the car in which Lee H. Williams was riding, and that the driver of the Studebaker truck, Harold Wells, was without fault, it would be your duty to return a verdict in favor of the defendants."

The plain and unmistakable inference from the above instruction was that, in order to hold for the defendants, the jury must find that the defendant Harold Wells was without fault whatsoever— that is, without fault singly or in concert or concurrence with the fault or negligence of any other. Under this instruction, if the jury found Well's negligence combined with that of Lee Williams, the driver of the decedent's car, to cause the accident, then its verdict could not have been for the defendants. Accordingly, we think that instruction No. 15 was less liberal, if anything, than the other one of the plaintiff's requested instructions above quoted. Therefore, the court's error, if any, in refusing this instruction was harmless, rather than prejudicial, under the circumstances.

Plaintiff rather incidentally complains that in none of the court's instructions did it tell the jury under what circumstances a verdict might be returned for the plaintiff. In support of this argument, counsel points to the fact that five (out of the 19) instructions given by the court, end with wording to the effect that under the conditions stated in the instructions "your verdict should be for the defendants." This argument ignores the fact that sometimes it is easier to state a premise by explaining under what conditions it does not hold true, than by attempting to explain more volubly the conditions under which it will hold true, or, in other words, to demonstrate it by using the process of elimination. As applied to instructions, this principle may be stated thusly: In some cases the jury may more easily, briefly, and effectively be told upon what findings it may return a verdict for plaintiff, by describing the findings or conditions upon which they must hold against him or for his adversary, than by attempting to set forth all of the various findings or combinations of them, under which they may hold for him. Of course, most cases lend themselves to the use of a combination of both methods and that is the system usually employed, with the result that some of the instructions end in expressions to the effect that "Your verdict shall be for the plaintiff," and others with the words: "Your verdict shall be for the defendants." However, to say, as an abstract proposition, that the use of either method, to the exclusion of the other, is unfair, in our opinion, is an attempt to draw a distinction without establishing an essential difference. Some of the instructions ending, as now complained of by plaintiff's counsel, were given by the court verbatim as he requested them. If counsel deemed this wording objectionable perhaps he should have changed it before submitting such instructions to the court. However, be that as it may, we have examined all of the instructions and fail to see, when they are considered all together and as a whole, wherein they in any way negate, preclude, or discourage the jury in returning a verdict for the plaintiff upon its finding of facts justifying such a verdict. When so considered and in view of the ample justification found in the evidence for the verdict returned in this case, we find no substantial ground for concluding that plaintiff was prejudiced by the wording complained of.

As we have found no cause for reversal in any of the errors complained of, the judgment of the trial court is hereby affirmed.

WELCH. CORN, DAVISON, and O'NEAL, JJ., concur. HALLEY, C.J., JOHNSON, V.C.J. and WILLIAMS, J., dissent.