ST. LOUIS–SAN FRANCISCO RY. CO.
v.
WITHERS.

No. 35547.

Supreme Court of Oklahoma.

April 20, 1954.

342

E. G. Nahler, St. Louis, Mo., Satterfield, Franklin & Harmon, Oklahoma City, for plaintiff in error.

· Lawrence H. Green and I. Jake Blevins, Ada, for defendant in error.

BLACKBIRD, Justice.

At the trial of the present case defendant in error, as plaintiff, obtained a verdict and judgment in the amount of $3,000 against plaintiff in error, as defendant, for personal injuries he received when struck by one of defendant's locomotives where said railroad track crosses the main street of the City of Ada, Oklahoma. From said judgment defendant has perfected this appeal. Our continued reference to the parties will be by their trial court designations.

The undisputed facts are that, at the crossing involved, defendant's main track crosses this principal thoroughfare in Ada's downtown business section at an angle by traversing it from northeast to southwest; that the street has sidewalks paralleling it on the north and south; that immediately north of said crossing two other railroad tracks branch off from this main line, one of them being called the "rift" track and the other the "house" track; that in order for a switch engine (such as the one involved) to transfer train cars off of the main line onto one of these two auxiliary tracks, or vice versa, it is necessary for it to push or pull them south into or across the street crossing so that the switches north of the crossing can be thrown; that at said crossing there are traffic signals of the "flasher type" with bells and red blinker lights which operate automatically to warn pedestrians and motorists, about to use the crossing, of the approach of locomotives, push cars, trains or other railroad rolling stock or vehicles; that such railroad vehicles standing on the tracks within a certain distance of the crossing will keep these signal bells and blinker lights operating or flashing as long as they stand there; that the defendant's depot and freight house are located parallel to these tracks a short distance north of the street crossing and a railroad locomotive, car or train standing on the track opposite the depot, or between there

and the crossing, will keep the crossing signals operating the same as if it was moving; that on the day plaintiff received his injury he was walking east on the sidewalk along the north edge of the street approaching the crossing from the west and one of defendant's switch engines struck him while it was backing across the street.

According to the testimony, traffic of at least two State highways travels this main street at this crossing besides heavy local traffic going from Ada's West side to its business section and East side, and vice versa, with the result that a great number of vehicles and pedestrians cross the railroad tracks at this point daily. There was also testimony indicating that trains, switch engines and other railroad rolling stock often stand on one of the above mentioned tracks opposite or near the depot for varying periods of time during which motorists and pedestrians customarily proceed on across the crossing while the traffic signals' red lights continue to flash and its bells ring. According to plaintiff's testimony such a situation existed on the day involved when he walked toward the crossing from the west, as he had done many times before. He testified that as he approached the crossing he saw the locomotive stopped ten or twelve feet north of it, that he looked into the locomotive's cab and saw no trainmen there, that he stopped "about a minute" to talk to two acquaintances he encountered just west of the crossing on the sidewalk, and then stepped onto the crossing. According to his testimony, he had just stepped across the nearest or west rail of the two tracks crossing the street when he was struck and knocked down, receiving the injuries involved. He further testified that he did not know until that instant that the locomotive, which had been standing still, had started moving. He testified that he heard no blowing of the locomotive's whistle or ringing of its bell. Two other witnesses also testified that they heard no such sounds. It is undisputed that there were no flagman, brakeman, or other person at the crossing or ahead of the locomotive's coal tender to warn people of its progress toward the street crossing.

Defendant's version of some of the facts in connection with the locomotive's approach to the crossing was in direct conflict with plaintiff's. According to its employees, including members of the train crew employed in the switching operations, the switch engine had coupled to its front end, five freight cars it was pulling off of the house track "down by the freight house * * * approximately one block" from the main street crossing at a speed of six or seven miles per hour and its progress or motion from there, to the point where it struck plaintiff, was continuous or without stop. These employees, plus an additional witness, testified that the locomotive's whistle was blowing and its bell was ringing as it approached the crossing.

Defendant's argument for reversal is submitted under three propositions. Under the first one, it argues that the trial court erred in overruling its demurrer to plaintiff's evidence and its motion for directed verdict on the theory that the evidence fails to show any primary negligence on its part. In this argument, defendant's counsel emphasizes plaintiff's testimony that he saw the railroad's "flasher type" traffic signals operating and knew that the locomotive or train was near the crossing. They contend that plaintiff's stepping upon the crossing with such knowledge was primary negligence and the sole and only cause of the accident; that the evidence unquestionably shows defendant had discharged its duty to warn plaintiff of the presence of the train. Cited in support of this argument are the cases of Kurn v. Jones, 187 Okl. 94, 101 P.2d 242; Missouri, K. & T. R. Co. v. Flowers, 187 Okl. 158, 101 P.2d 816, and Missouri Pacific R. Co. v. Merritt, 104 Okl. 77, 230 P. 513. Plaintiff's counsel answer this argument by pointing to his evidence that he did not know the locomotive was moving and say that on the basis of the undisputed facts concerning the railroad crossing involved, it was an extraordinarily dangerous one, and that whether the railroad was derelict in its duty to warn plaintiff of the locomotive's approach was a question for the jury in view of the difference between the plaintiff's and defendant's version of the facts concerning said approach.

At the trial, plaintiff's counsel took the position that, accepting his client's version, viz., that the switch engine's progress toward the crossing was not continuous, but that it was stopped with no one in its cab when he last saw it before the accident, and that it must have suddenly started from that position without a warning of any kind other than the flasher signals that had continued to operate all of the time it was stopped near the crossing, and that people customarily proceeded on across the tracks when such situation existed, it was incumbent upon the railroad to give another and further warning either by flagman, brakeman or crossing gates to let plaintiff know that the train had started and was going to cross the street. Whether the railroad had discharged its duty of warning plaintiff in a situation such as was shown by plaintiff's evidence (whose truth must be accepted in considering a demurrer to his evidence and defendant's motion for directed verdict) was a question for the jury. Most of the cases cited by defendant involve situations different from the present one in that there the trains kept moving and approaching the persons injured and/or killed by them after coming into sight or hearing, while here, according to plaintiff, the locomotive was standing still the last time he saw it before the accident. In the Flowers and the Merritt Cases, supra, the plaintiffs themselves affirmatively showed by their testimony that they were not watching or looking for trains as they approached the crossings involved. In this connection, also compare Gulf, C. & S. F. R. Co. v. Nail, 156 Okl. 294, 10 P.2d 668; Chicago, R. I. & P. Ry. Co. v. Barton, 59 Okl. 109, 159 P. 250, and St. Louis, I. M. & S. R. Co. v. Gibson, 48 Okl. 553, 150 P. 465. Nevertheless, the principle we adhere to is recognized in the third paragraph of the syllabus of the last cited case as follows:

"Where the employes of a railroad company on approaching a crossing, fail to ring the bell and sound the whistle, *if the evidence leaves a doubt* as to whether the deceased saw the train, or knew that it was approaching, then the failure of defendant to ring the bell and sound the whistle would raise a question to be submitted to the jury as to whether or not that failure was the cause of his going upon the track * * *." (Emphasis added.)

On the basis of the conflicting evidence in the present case, there was the same "doubt" and the same questions of fact as are referred to in the above quotation and they were properly left to the jury to resolve. Tulsa Fruit Co. v. Lucas, 208 Okl. 166, 254 P.2d 788. For further discussions relating to a railroad's duty to warn of dangerous crossings, see St. Louis-San Francisco Ry. Co. v. Robinson, 99 Okl. 2, 225 P. 986; Tisdale v. Panhandle & S. F. R. Co., Tex.Com.App., 228 S.W. 133, 16 A.L.R. 1264, and the Annotations thereto, together with cases cited in the Annotations at 71 A.L.R. 1160 and 24 A.L.R.2d 1161.

The views expressed above are largely determinative of defendant's contentions under its second and last proposition, wherein they argue that the trial court erred in giving the jury its instructions numbered 12, 13 and 14. In discussing the last two of these instructions, its counsel continues to argue that the Court erred in submitting to the jury the question of what was reasonably necessary to warn travelers at the crossing in question, in view of the undisputed evidence that it was there maintaining and operating the latest type flasher signals. Reference to the above cited authorities shows that at a busy and extraordinarily dangerous crossing, such as the evidence indicated was the situation here, a railroad company's duty to warn travelers using it may not be fully discharged by the use of such signals; and whether or not there has been such a discharge is for the trier of facts to determine. We note also counsel's reiteration under their last proposition of their previous claim that the evidence shows "plaintiff was aware of the train approaching the crossing" but we have already shown that such statement is not supported by undisputed evidence. In the state of the evidence the question of whether plaintiff was *or should have been* aware of the switch engine's approach to the crossing was properly submitted to the jury.

Instruction No. 12, in its entirety, is as follows:

"You are instructed that it is the duty of a railway company to place a bell of at least thirty pounds in weight or a steam whistle on its locomotive engines operating upon any railroads in this State, and that such bell shall be rung or sounded at a distance of at least *80 rods* of the place where the railroad shall cross any street or road, but such statute *is the minimum precaution, required by law,* of railroads in this State and that such Statute is not intended to furnish a standard *by which to determine in every case the care and caution that the railway company should take* to warn the travelling public of the approach of its trains." (Emphasis added).

Defendant argues that the first part of the above instruction is inapplicable to the facts in the present case in that the evidence indicates the locomotive did not travel a total distance of "80 rods" before striking plaintiff. They say the statute referred to in that part of this instruction, 66 O.S.1951 § 126, does not purport to prescribe the duty of a railroad company at a crossing like the one in question, citing the cases hereinbefore dealt with, and Missouri, O. & G. R. Co. v. Adams, 52 Okl. 557, 153 P. 200, 202. As previously pointed out, in all but the last cited case, the evidence showed that the persons killed or injured saw or knew or should have seen or known of the train's approach if they had been giving attention to such matters and the defendant railroad companies' failure to signal such approach could not have been the cause of the accident involved. In the Missouri, O. & G. R. Co. case, however, the court indicated that the statutory requirement of blowing the whistle or ringing the bell was "probably intended" for country crossings, and in that case where the train had not traveled 80 rods from its starting point before reaching the crossing, held the trial court erred in giving the following instructions:

"(4) You are further instructed that it was the duty of the defendant to either ring the bell upon the engine or sound the whistle at a distance of at least 80 rods from a public highway where such railroad crosses such highway and to keep the bell ringing or the whistle blowing until the train should have crossed said public street as a warning to the public of the approach of such train, and if you believe by a preponderance of the evidence in this cause that on or about the 9th day of January, 1912, the defendant was operating a train of cars along its railroad tracks in the city of Muskogee, *you are instructed that it was its duty to ring the bell or blow the whistle as a warning to the public of the approaching train at least 80 rods from Lake street before reaching same, and to continue to ring the bell or blow the whistle until after it had passed said crossing or public highway, and if you further believe from a preponderance of the evidence in this cause that the agents, servants, and employes of the defendant in charge of and operating said train failed or neglected to ring the bell or blow the whistle in the manner herein described, and by reason of such failure or neglect to ring the bell or blow the whistle the plaintiff was not warned of the approach of said train in time to get out of its way,* and said wagon in which she was riding was struck by the locomotive drawing said train of cars, and she was thereby injured, then and in that event *your verdict will be for the plaintiff,* unless you find from the evidence that plaintiff was guilty of contributory negligence as hereinafter defined to you in these instructions." (Emphasis added.)

The defendant in the above case contended that because of the distance between the depot and the crossing, its train crew could not have complied with the statute so that under the above quoted instruction, "the jury were *bound* to find from the evidence that" (emphasis ours) it had failed to perform the duty described in said instruction. This Court seemed to agree, but said: " * * * yet it was its duty to comply with the spirit of it (the statute), and to give warning of the approach of its train to a city street crossing by sounding the whistle or ringing the bell." (Citing authori-

**346**

ties.) After stating its opinion that the trial court erred, under the facts of that case, in giving that instruction with the "80 rods" in it, this Court also said:

"* * * While *we might hesitate to reverse this case were this the only error we find in the record,* we cannot say that the error was harmless, and, in view of the fact that the case must be tried again, we call attention to this error." (Emphasis added.)

Because of the differences between the record before us and the wording of the instruction involved here, and the record and instruction involved in the Missouri, O. & G. R. Co. case, we cannot adopt the same view of the alleged error that was expressed there. The instruction here did not tell the jury that it was the duty of the defendant to either ring the engine's bell or blow its whistle at a distance of at least 80 rods from this crossing. All instruction 12 did was attempt to set forth the substance of the duty described in the statute, supra, and then qualify that by telling the jury that the duty of ringing the bell or blowing the whistle was the "minimum" precaution that was required of railroads to warn the traveling public of the approach of its trains at crossings. Obviously the "80 rod" provision was not applicable to this case because the locomotive or train had not traveled that far from its starting point when it reached the crossing. And, because this fact was so obvious and undisputed, and, in the instruction itself, it was not made positively applicable, we cannot believe the jury was mislead by it. As said in Missouri, O. & G. R. Co. v. Parker, 50 Okl. 491, 151 P. 325, 328, quoted and followed in Atchison, T. & S. F. Ry. Co. v. Raleigh, 194 Okl. 589, 154 P.2d 62: "Common sense should enter into the decision on such propositions as this and govern when reason points but one way." Judgments based on verdicts are not reversed for abstract, technical and ineffective errors in particular instructions; and in determining whether the error complained of is of such character, the evidence and the instructions as a whole may be proper subjects of scrutiny. See Williams v. Terbush, 208 Okl. 401, 256 P.2d 434; Carey, Lombard, Young & Co. v. Huckaby, 186 Okl.

685, 100 P.2d 894; Chicago, R. I. & P. R. Co. v. Garrison, 169 Okl. 634, 38 P.2d 502; Drum Standish Commission Co. v. First Nat. Bank, 168 Okl. 400, 31 P.2d 843. As there is nothing to indicate that the jury's verdict lacked sufficient evidentiary support as to defendant's negligence, irrespective of its noncompliance with the "80 rod" statute, or that said verdict would have been any different had Instruction No. 12 contained no reference to such statutory provision, we must hold that such reference, if error, was harmless under the circumstances here, and insufficient cause for reversal. See Reinhart & Donovan Co. v. Williamson, 191 Okl. 539, 131 P.2d 765.

As we have found cause for reversal in none of the alleged errors urged, the judgment of the trial court is hereby affirmed.

JOHNSON, V. C. J., and WELCH, DAVISON, ARNOLD and WILLIAMS, JJ., concur.

HALLEY, C. J., and CORN and O'NEAL, JJ., dissent.